·what she said to you? A. The first place I met her was in 105 Johnson avenue. I was to her sister's, Mrs. Ruoff, and she took a fancy to me, and I took a fancy to her, and she said, 'How about if we go housekeeping?' Q. What else? A. So I said, 'All right,' and went to work and got furniture, and we moved in 15 Bancroft Place. Q. Was that all the conversation you had with her? A. Yes, sir."

It is clear from this evidence that no contract of marriage ever existed between the assured and the plaintiff, civil or ceremonial. He was not her husband, and her warranty contained in the application for the insurance to that effect was false. This breach of warranty was held in Gaines v. Fidelity & Casualty Co. (Sup.) 87 N. Y. Supp. 821, to be sufficient to forfeit the policy. In that case we took occasion to examine the cases on this question at some length, and its further discussion here is unnecessary. Upon the authority of that case, this judgment must be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event.

BARTLETT, J., concurs. HIRSCHBERG, P. J., dissents.

JENKS, J. I vote for reversal. I think that HOOKER, J., is right in his views that there was a breach of warranty made by the answer that the assured was the husband of Lena Makel. But I do not base my concurrence upon Gaines' Case (Sup.) 87 N. Y. Supp. 821, for the reason that we limited our judgment in that case to a policy of accident insurance. I prefer to rest my decision upon Jeffries v. Economical Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833. It is true that HOOKER, J., writing for the court in Gaines' Case, supra, cited Jeffries' Case, supra; but the decision in Gaines' Case is not a clear precedent in the case at bar, for the reason just stated. Ruoff's Case, 86 App. Div. 447, 83 N. Y. Supp. 758, does not deal with the question presented in this case. I think now, as I thought when I wrote in Ruoff's Case, that the woman could insure her life for the benefit of the man, though they never intermarried, and, of course, that the man could insure his life for the benefit of the woman. Olmsted v. Keyes, 85 N. Y. 593. But the question in this case is as to the breach of warranty made by the assured in writing in his application that he was the husband of the beneficiary, when he was not.

---

WARD v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. June 17, 1904.)

1. MASTER AND SERVANT—PERSONAL INJURIES—STREET RAILWAYS—RULES LIMITING WORK.

Defendant street railway company had rules relating to operation of its trains, forbidding the pushing of cars except in cases of accident, and then requiring a man on the rear platform. Another rule required the speed of a train to be regulated so that it could be stopped within the distance the motorman could see ahead. Decedent was injured while coupling cars and making up trains, at a station, by another employé on the north car of another train backing it southward into defendant's train. In an action to recover for decedent's death on the ground of negligence

in failing to provide proper rules for the making up of trains, the court instructed that, as a matter of law, the above rules applied to the movement of cars in making up trains, but left the question of the sufficiency of the rules to the jury. There was no evidence that other rules that would afford greater safety were in use under similar circumstances by other roads, nor were experts called to show the necessity or practicability of other rules. *Held*, that it was error to submit to the jury the question of the sufficiency of the rules.

2. SAME—EMPLOYERS' LIABILITY ACT.

As the employers' liability act (Laws 1902, p. 1748, c. 600) creates no new liability for the failure of an employer to make proper rules and regulations for the safety of employés, an action for such failure is based on the common law.

3. SAME.

Employers' Liability Act (Laws 1902, p. 1750, c. 600) § 3, providing that an employé shall be presumed to have assented to the necessary risks and no others, and defining what such risks include, and making the question of employé's understanding of such risk a question for the jury, being of general application to all actions by servants against masters for negligence, applies to an action for damages for negligence for failing to make proper rules and regulations for the safety of employés.

## Appeal from Trial Term, New York County.

Action by Kate Ward, administratrix, against the Manhattan Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

This is a statutory action to recover for the death of Joseph M. Ward, who was a switchman in the employ of the defendant, and sustained fatal injuries about 6 o'clock in the morning of the 10th day of January, 1903, while coupling cars at the Pelham Avenue station, at 190th street. The accident occurred before daylight. This was the terminal station for trains from the south, but the road continued on to Bronx Park. Trains known as "shuttle trains" operated between Pelham and the Bronx; but these trains did not commence running until 6:25 a. m., and had not commenced running at the time of the accident. At Pelham avenue the station lies between the two main or north and south bound tracks, and a little north of the station a siding or extra track branches off from each of them inwardly and toward the north. The cars when not in use were stored on these sidings. At this time of the morning trains were intended to be run on three-minute headway. Trains were made up and started south from either side of the station, but trains from the south only came on the north-bound track. There were three cars standing on the south-bound track, the southerly end being nearly opposite the middle of that part of the station in which the ticket office is located; and three other cars had been moved northerly on this track from south of the station, to be coupled to them to form a train of six cars. These two three-car sections of the train had been moved together within coupling distance, and the decedent was standing on the track for the purpose of making the coupling. About the time the decedent was engaged in making the coupling, one Hector, another switchman, moved two cars down the south-bound track from the north and bumped against this train, inflicting the injuries which resulted in the decedent's death. The two cars Hector was moving were coupled together, the motive power being in the northerly car, and he was operating them from the northeasterly corner of that car. Hector was endeavoring to get these two cars onto the north-bound track, with a view to making up another train there. The switch connecting the siding with the south-bound track was within 100 feet north of the station. The north-bound track was reached from the south-bound track via this siding, and to reach the siding Hector was obliged to move these cars past this switch to the south. The motor car was lighted, but the southerly car which he was pushing was dark and could not be lighted, as it was not connected with the electric current, which could only be connected by attaching a car at the other end. There

were two other switchmen upon the train of six cars, engaged in performing duties with reference to preparing it for starting, and it was brilliantly lighted by electricity. Hector says that as he was moving the two cars down he observed the train standing there, and he stopped north of the switch to wait until it moved out; that after standing there a minute or so he thought he observed the train moving out, and started on; that the track curved there so that the car ahead obstructed his view as he moved forward; and that he did not discover that the train was still at the station until the collision. There is other evidence tending to show that to one in Hector's place the view of a train in front would not be obstructed; that its lights could be seen through the front windows of the cars coming down; but Hector's testimony indicates that the windows were frosted, and that the line of the car seats obstructed his view. In the vicinity of the switch there was a disc or "high ball" signal, which was operated by a lever from near its base for the guidance of shuttle trains, indicating by a white disc by day and a white light by night when the track was clear, and a red disc by day and a red light by night when there was danger. This signal, however, was not in use at the time of the accident, and was not used in connection with making up trains. The plaintiff alleged, among other things, that the defendant was guilty of negligence in failing to make and promulgate proper rules and regulations for the movement of its cars and trains at this station while being coupled. The plaintiff proved certain rules made by the defendant, and, among others, rules 19 to 23, inclusive, and 257, which are as follows:

Rule 19. "If you can see ahead the distance of a block, run so that you can stop your train in that distance. If you can see only fifty feet ahead, run so that you can stop your train in that distance. Reduce the speed of your train so that you are positive that you can stop in the distance that you can see."

Rule 20. "When running between automatic signals, on leaving a signal that is clear, govern your speed to seeing distance, in order that there may be no possibility of running by the next signal in case it is red. This will also permit you to stop in case of anything occurring unusual within the automatic block. In all cases of doubt take the safe side."

Rule 21. "Do not rely on information from any one as to the number of minutes ahead of you a train is, in foggy weather, as the preceding train may have stopped just after passing out of sight. Govern yourselves strictly in accordance with the rules laid down above. This will afford absolute safety and prevent accident to your train when fogs prevail."

Rule 22. "This rule also applies in snowstorms or whenever the vision is obscured."

Rule 23. "Remember always that safety is the first consideration."

Rule 257. "All trains on main track must be drawn and not pushed, except in case of accident or other emergency, when a competent man must be stationed on the rear end of the last car, with the bell cord in hand ready to give the signal, and a man with a red signal sent back to flag the following train. No train must be backed until the following train has been notified and stopped."

The plaintiff also gave evidence tending to show that for a long time it had been customary to move cars for the purpose of making up trains in the manner Hector was moving these cars on the day in question; that is to say, by pushing the cars when the motor car was so located as to require it, or the convenience of the business required it, and without having a man on the platform in front as the cars were moving. The other material facts are stated in the opinion.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John F. McIntyre, for appellant.
John M. Weed, for respondent.

LAUGHLIN, J. The charge of negligence against the defendant which was submitted to the jury was its failure to make, promulgate,

and enforce suitable and sufficient rules for the guidance of its employés with reference to their own safety in moving cars and making up trains. The learned trial justice instructed the jury that, as matter of law, the rules quoted in the statement of facts were applicable to the movement of cars in making up trains. It would seem, from some of the expressions contained in the charge, that the court intended to instruct the jury that these rules, if enforced, were sufficient; but the court declined to rule that the rules were sufficient, and their sufficiency was left, as a question of fact, to the determination of the jury, and counsel for the defendant excepted. This, we think, was error. Assuming that the rules forbidding pushing cars except in cases of accident, and then requiring a man on the rear platform, and requiring a motorman to regulate the speed so that he could stop in the distance that he could see ahead, were applicable to the movement of cars in making up trains, it is manifest that if they, or any of them, had been observed, the accident would not have happened. It was not shown that any other rules that would afford greater safety to the employés were in use under similar circumstances by other railroads, nor were experts called to show the necessity or practicability of any other rules. In these circumstances, to leave the question of the sufficiency of such rules to the jury is to permit them to speculate without any guide as to the necessity for other rules; and there may have been no uniformity of opinion on the part of the jurors as to the nature of the other rule or rules that they were left to find should have been adopted and promulgated. Berrigan v. N. Y., L. E. & W. R. R. Co., 131 N. Y. 582, 30 N. E. 57; Morgan v. H. R. Ore & Iron Co., 133 N. Y. 666, 31 N. E. 234; Corcoran v. N. Y., H. H. & H. R. R. R. Co., 58 App. Div. 606, 69 N. Y. Supp. 73; Kapella v. Nichols Chemical Co., 83 App. Div. 45, 82 N. Y. Supp. 477; Larow v. N. Y., L. E. & W. R. R. Co., 61 Hun, 11, 15 N. Y. Supp. 384. We are of opinion, however, that these rules did not apply to the making up of trains. They appear to be applicable only to the movement of trains after the same are made up. The defendant rested without offering any evidence. Whether it had any rules regulating the making up of trains, or whether any rules regulating the making up of the same are in use by other roads or are practicable, was not shown. If these rules are applicable to the making up of trains, the evidence would warrant the finding that they were customarily violated, and that the defendant was chargeable with knowledge of such violations. Doubtless this is the theory on which it was intended to submit the case to the jury, but, for the reason already stated, it is not at all certain that the verdict was rendered on that theory.

The errors already pointed out require a new trial, but in awarding the same we deem it proper to make some further observations. The court, submitting the case to the jury, instructed them upon the law concerning the assumption of risks by an employé as the law existed prior to the enactment of the "Employers' Liability Act" (so called). No new liability is created by that act for the failure of an employer to make proper rules and regulations for the safety of his employés. This action, therefore, is based upon the common law.

It has been decided that sections 1 and 2 of the employers' liability act (chapter 600, p. 1748, Laws 1902) apply only to causes of action arising thereunder; but it has not been decided that none of the provisions of the act apply to causes of action for negligence in general, regardless of whether they arise under the statute or at common law. Section 3 (page 1750) of the act is manifestly of general application to all actions by servants against masters for negligence upon causes of action arising thereafter. It prescribes a new rule, with reference to the assumption of the risks, more favorable to the employé than the rule that previously obtained, and we are of opinion that it is applicable to this case.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.