(110 App. Div. 571.)

### O'NEIL v. KARR.

(Supreme Court, Appellate Division, Third Department. January 8, 1906.)

1. MASTER AND SERVANT—DUTIES OF MASTER—USE OF APPROVED METHODS.

At common law, a master owes no duty to a servant to use the most approved methods.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 267, 269.]

2. SAME—INJURIES TO SERVANT—ACTIONS—EMPLOYER'S LIABILITY ACT—APPLICATION.

Laws 1902, p. 1748, c. 600, § 1, gives a servant a right of action for injuries caused by defects in the ways, works, and machinery of the master's business, or by reason of the negligence of a superintendent. Section 2 provides that no action for recovery for injury "under this act" shall be maintained, unless a prescribed notice is given to the employer. Section 3 (page 1750) provides that the question of assumption of risk shall be one for the jury, and that a servant shall not be entitled to any remedy against his master "under this act," where the servant knew of the defect and failed to give notice thereof. *Held*, that the notice required by section 2 of the act (page 1749) must be served in order to entitle the servant to the benefit of section 3, as well as in actions where liability is based on section 1; and an injured servant is not entitled to have the question of assumption of risk submitted to the jury in all cases in accordance with section 3, where he fails to serve the notice required by section 2, but brings his action for his injuries at common law.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 806, 1068–1088.]

3. SAME—CONSTRUCTION OF STATUTE.

Employers' Liability Act, Laws 1902, p. 1748, c. 600, increases the liability of the master in derogation of the common law, and must be strictly construed.

4. SAME—ASSUMPTION OF RISK.

A servant of a master engaged in blasting operations, who continues in the employment with full knowledge of the dangers incident thereto, assumes the risk.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 574–600.]

Kellogg and Chester, JJ., dissenting.

Appeal from Trial Term, Rensselaer County.

Action by John O'Neil against Thomas H. Karr. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Defendant was taking stone from a quarry in the town of Brunswick in Rensselaer county. The quarry was situated directly in the woods; the timber having been cleared off to reach the same. The men cut the wood and the timber as they worked. On August 12th the woods and trees were only 12 or 15 feet distant from where the blast was fired. Woods and trees surrounded the whole place on the north and south. The nearest building was half a mile away, and the nearest inhabited house was three-quarters of a mile distant. The quarry was open and above ground, the work was all done on the surface, and all parts of the quarry were visible to the men working. At the south end of the quarry was the engine house. It was 16 feet wide east and west by 22 feet north and south. The north side of the engine house looked right upon the quarry. At the east end of the north side of the engine house was an open door through which a belt ran, which connected the engine with a crusher. Toward the west corner of the north side was an entrance door leading into the engine house from the quarry. Both the engine door and the belt door were six feet in height. North of the engine house, a distance of about 50 feet, was the crusher for breaking stone. North of and adjoining the crusher were the bins for holding the crushed stone. Right north of the bins was the open quarry where the blasting was done. The blasting was performed by the use of dynamite. It was done mostly between 12 and 1 o'clock at noon and after 6 o'clock at night. Prior to a blast, a warning was given, and it was the custom of the men after the warning to seek protection either behind the trees in the woods or under this crusher or in this engine house. The plaintiff was injured by being struck from one of these blasts upon the 12th day of August, 1902. He was at work for the defendant as a teamster. He had been working around the quarry for three months. He knew that the blasts were not covered with logs, as is sometimes done, and he knew the danger from falling missiles, as he had at all times paid heed to the warning, and sought protection whenever a blast was to be fired. Upon the day in question, after the warning, he sought refuge in the engine house. He went in and shut the door, and went toward the north end. A stone not much larger than your finger was thrown from the blast through the door through which the belt was being operated, hit plaintiff in the jaw, and caused the injury for which he has recovered in the action. The trial court submitted to the jury the questions of defendant's negligence, and of plaintiff's want of contributory negligence, and of plaintiff's assumption of the risk. The jury found for the plaintiff. From the judgment entered upon that verdict, and from an order denying defendant's motion for a new trial, this appeal has been taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and KELLOGG, JJ.

Thomas S. Fagan, for appellant.

Owen D. Connolly (G. B. Wellington, of counsel), for respondent.

SMITH, J. That, under the common law, an employé assumes the obvious risks of an employment will hardly be questioned. This plaintiff had knowledge of the fact that these blasts were not covered. He knew the danger as he sought protection whenever warned that a blast was to be fired. A master at common law owes no duty to his employé to use the most approved methods. An employé, with full knowledge of the methods used, may accept or decline the service; and if the service be accepted, he has no legal complaint to make of his employer for injury caused by the neglect to use such improved methods.

The learned trial judge, recognizing this rule of common law, allowed this case to go to the jury, and has denied defendant's motion for a new trial, upon the ground that this action is no longer controlled by the common law. He has held that by chapter 600, page 1748 of

the laws of 1902, in an action either brought under the statute or at common law, a servant is not deemed to have assumed the obvious risks of his employment, unless the master has used due care to provide safe appliances for his use; and that in all cases the question of whether the servant has assumed the risk of the employment is a question of fact for the jury, and cannot be determined as matter of law by the court. This was the interpretation of the statute given by the Appellate Division, First Department, in the case of Ward v. Manhattan Railway Company, reported in 95 App. Div. 437, 88 N. Y. Supp. 758. In that case, it was said that if an employé would take advantage of the enlarged liability prescribed by section 1 of the act, he must serve the notice prescribed by section 2 thereof; that the benefit of the enlarged liability created by section 3 of the act, however, was given to him whether or not he had served the notice required by section 2. This was purely dictum, however, as it was not necessary to the decision there made.

By section 1 of that act it is provided where personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time (1) by reason of any defect in the condition of the ways, works, and machinery connected with, or used in the business of the employer, which arose from or had not been discovered or remedied owing to the negligence of the employer, or of any person in the service of the employer, and entrusted by him with the duty of seeing that the ways, works, and machinery were in proper condition; (2) by reason of the negligence of any superintendent of the employer, the employé, or, in case of his death, his executor or administrator should have a right of action. In the second section it is provided that no action for recovery of compensation for injury or death under this act shall be maintained, unless notice of the time, place, and cause of the injury is given to the employer within 120 days, and the action is commenced within one year after the occurrence of the accident causing the injury or death. Provision is then made for the service of the notice. In section 3 it is provided that an employé, by entering upon or continuing in the service of the employer, shall be presumed to have assented to the necessary risks of the occupation, and no others. Necessary risks are then defined as including those risks inherent in the nature of the business "which remain after the employer has exercised due care in providing for the safety of his employés. * * *" It is then provided that in an action maintained for the recovery of damages for personal injuries, if an employé continues in the service of the employer after discovery of the danger, the employé shall not, as matter of law, be deemed to have assented and assumed the risk, but that such question shall be for the jury to determine; and it is further provided that an employé or his legal representative "shall not be entitled under this act" to any right or remedy against the employer, where such employé knew of the defect, and failed to give notice thereof, unless the employer or his superintendent had such knowledge. By section 4 it is provided that an employer, who shall have contributed to an insurance fund, may mitigate damages to the extent of his contribution. By section 5 it is provided that all existing rights of action for negligence or to re-

cover damages for injuries resulting in death are continued, notwithstanding the failure to give such notice.

It is true that section 3 has in it some general expressions, which might at first seem to make it applicable to all actions whether at common law or under this act. But no single section of an act can be separated from the rest and alone construed. This act must be read as a whole. In section 2 it is provided:

"No action for recovery of compensation for injury or death under this act shall be maintained, unless notice of the time, place, and cause of the injury is given to the employer. * * *"

This provision of the statute does not require notice to be given in an action for injury or death under the first section of the act, but under the act itself, which includes all the sections; and the conclusion would seem to me to be irresistible that, by force of this clause, one who would seek any of the benefits of this act must give the notice required by the act. Whether the recovery is sought for an increased liability under section 1 or section 3, the action is in either case brought under the act, and by the terms of section 2 quoted, the notice therein specified is required to be served. That this construction is the true one would seem to be indicated by the provision in section 3 itself, which provides that an employé, or his legal representative, shall not be entitled "under this act" to any right of compensation or remedy against the employer where such employé knew of the defect or negligence, and failed to give notice thereof unless the employer had equal knowledge thereof. If this act were separable this provision should read that an employé or his legal representative shall not be entitled under this section of this act to any right of compensation, etc. The reading of the section itself thus indicates that the act is not separable, but is entire, and was so regarded by the Legislature when the act was passed, and its benefits are given to those who comply with its condition of notice given.

Again, this act is in derogation of the common law. The liability of the master is increased. In Gmaehle v. Rosenberg, 178 N. Y. 152, 70 N. E. 412, Judge Cullen, in discussing this act says:

"The Legislature, deeming that by the act it was about to extend the liabilities of masters to their servants [to what exent they effectuated this purpose it is unnecessary now to determine], thought it wise to safeguard the new liabilities by requiring that notice should be given the master of the accident for which it was sought to recover compensation. But it was only the new or extended liability that it was intended to subject to such safeguard. This intent is clearly expressed when the Legislature limited the requirement for notice to actions for injuries or death 'under this act.' "

In the case cited, the question decided was whether the common-law action of negligence survived the statute. The quotation, however, calls sharp attention to the nature of the statute as one increasing the liability of the employer, safeguarding the same by the notice required by section 2. An increased liability without the giving of such notice should not be found in doubtful phrases, as authority is not needed to the proposition that a statute increasing liability in derogation of the common law must receive a strict construction.

We do not agree, therefore, with the construction of the statute

found in the Ward Case above cited. As this plaintiff continued in defendant's employ with full knowledge of the dangers incident thereto, he must be held to have assumed the risks. The judgment and order should be. reversed, and a new trial granted, with costs to appellant to abide the event. All concur, except KELLOGG and CHESTER, JJ., who dissent.

JOHN M. KELLOGG, J. (dissenting). The master owes to his servant the exercise of reasonable care and prudence in providing for him a safe place in which to work, and reasonably fit and safe machinery and appliances. Harley v. B. C. M. Co., 142 N. Y. 31, 36 N. E. 813; Sisco v. L. & H. C. R. Co., 145 N. Y. 296, 39 N. E. 958. Whether he was negligent in this case depended upon the manner in which he conducted his work, and how such work is usually conducted by quarrymen, the dangers apparent and reasonably to be apprehended, and all the various circumstances of the case; his negligence was therefore a proper question to submit to the jury.

The question of assumption of risk is not an element of the plaintiff's cause of action, but is an affirmative defense, to be presented and established as such. Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 63 N. E. 541. Formerly, whether the defendant established that defense was to be determined by the court or jury, as required by the ordinary rules of practice. Many times it was established, or appeared so clearly that it was determined by the court; other times, where different inferences might be drawn from the facts appearing as to the servant's knowledge of the defect, his intelligence, his appreciation of the danger, and the circumstances of the situation, it was left to the jury to determine. The question always was, the same as now, did the servant know the defect, appreciate the danger, and then, by accepting or continuing the employment thereby, assume the risk? If so, the defense was established. The want of harmony in the decisions upon this subject arose from different views as to where the burden of proof lay; but, in 1902, the Dowd Case decided that the assumption of risk was an affirmative defense, and no part of the plaintiff's case. This statute, passed the same year, attempted to make a uniform practice upon this subject, and, by section 3, directed that in all future cases this defense should be passed upon by the jury. It provides that "in all cases arising after this act takes effect," and "for injuries received after this act takes effect," where the employé knew.the defect, the question whether he understood and assumed the risk should be determined in the first instance by the jury, and not by the court. Section 2 of the act requires a notice in an action to recover "under this act," and in Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411, the Court of Appeals has held that the act creates a new cause of action, making the employer responsible for the carelessness of the superintendent, or one acting as such, and perhaps for a defect of ways, etc.; and that no notice is required except to recover for those new causes of action. There is no claim that a notice must be served to affect or operate upon a mere affirmative defense. Every word in the statute should be given its reasonable and fair interpretation, and should not be construed as meaningless, or be given a

forced construction, unless necessary to carry out the intent of the act. The title of the act is:

"An act to extend and regulate the liability of employers to make compensation for personal injuries suffered by employés."

We would infer that the act had two objects: First to extend; 'and, second, to regulate, and so we assume that the regulation was to refer to other matters than the liability extended. Otherwise the use of the word "regulate" would be surplusage, because the act creating the new liability would naturally define its terms and conditions. By giving the words used their ordinary and reasonable meaning, we see the liability is extended by creating one and perhaps two new causes of action, and is regulated in all future cases by providing that, where the servant knew of the defect, the question whether he understood and assumed the risk was to be determined by the jury, and not by the court. Section 3, in substance, provides that in all future cases between master and servant, the necessary risks of the employment, where the master is not negligent, are assumed by the servant, as matter of law; but where the master is negligent, and the servant knew of the negligence, that the question whether he understood and assumed the risk shall be determined as a matter of fact, and not of law. It does not relate at all to the cause of action, and does not add any new liability so far as this case is concerned. It relates solely to the remedy, the question of practice by the court on the trial, and prescribes the manner in which the defense of the defendant upon that subject shall be decided. The language of section 3 is in terms extended to all cases thereafter arising, except the last sentence, which provides that the employé "shall not be entitled under this act to any right of compensation or remedy against the employer," if he knew of the defect, and failed to communicate it to the master or superintendent, when the defect was unknown to them. That provision does not qualify or destroy the previous general language of the section; it simply prohibits a servant, who has secreted such a defect, from gaining any benefits under the act. By the use of the disjunctive "or" in the sentence, it appears that such a servant may lose either of the two benefits given by the statute, which are (1) the right of action given by sections 1 and 2; or (2) the rights pertaining to the remedy given by section 3 itself. The act is intended to benefit the employé; but this section provides that, if he secretes the defect from the master or superintendent, he shall gain no benefit whatever under the act. The language used is appropriate, and should have just the effect intended, but does not qualify or destroy what precedes it. In my judgment, section 3 of the act applies to all actions of negligence brought by the servant against the master, and this case was therefore properly submitted to the jury. The action against an employer for his personal negligence is at common law, and not under the act. The new cause of action is for the negligence of a person acting as superintendent. If the construction here contended for is not right, then, where the employer is personally guilty, section 3 does not apply; where he is blameless, it does apply. He may have a nonsuit in case he is personally at fault; otherwise not. This result does not seem reasonable. A construction should be adopted which gives the section

a uniform application and simplifies the practice. While the effect of this section was not necessarily decided in Ward v. Manhattan R. R. Co., 95 App. Div. 437, 88 N. Y. Supp. 758, it was properly and deliberately passed upon in that case, and has an important bearing here.

It is unnecessary to consider whether the verdict is sustained by the evidence or not, as the question now being determined is the propriety of the submission of the case to the jury.

CHESTER, J., concurs.