The plaintiff's intestate, while engaged in the discharge of his duties as a brakeman for the defendant, was killed under the following circumstances: On the 25th of September, 1905, the train on which he was employed started from Rochester, and at about four o'clock in the afternoon reached Seneca Falls, where one car was to be left and three attached. For that purpose the engine and one car, known as the Syracuse car, were detached from the train and switched from the main track to a storage siding where there was a string of five or six cars, the most westerly of which was one loaded with hay that was to be made a part of the train. A coupling was made between the Syracuse car and the most easterly car of the string, which was a Michigan Central car, and all the cars on the siding were pulled out and switched over on to the main track where the hay car was left. Thereupon the remaining cars of the string were taken back to the storage siding in order to leave them where they were before. There were automatic couplers on the Michigan Central car and on the Syracuse car, and on the latter as well as on the engine were air brakes duly connected. As the engine backed the string westerly on the storage siding, *Page 419 
Hoy, a brakeman, ran alongside for the purpose of cutting the coupling between the Syracuse and Michigan Central cars. There was a slight curve in the tack so that the engineer could not see Hoy when he was close to the train and he could not see the engineer. When the time came to make the cut, Hoy stepped out from the train and signaled the engineer to slow up, which he did by applying the air brake and reducing the speed from five miles an hour almost to a stop. This let out the slack and loosened the coupling between the cars. Hoy tried to uncouple the Michigan Central and Syracuse cars, so that the cars to be left on the siding would move on steadily and smoothly by their own momentum to the position desired. He lifted the lever that should have pulled the pin which held the coupling together between said cars. The lever turned, however, without lifting the pin and there was a sudden jolt owing to the defective coupling. As Hoy thus failed to uncouple he signaled the engineer to back slowly and when the slack came he pulled the pin by hand.
When Hoy tried to uncouple but failed, because the coupling appliance did not work, the plaintiff's intestate was walking westward on top of the train in order to apply the hand brake at the proper time. As the jolt came, owing to the sudden stoppage and the failure to uncouple, he was within two or three feet of the west end of the rear car and the effect was to throw him head foremost over the end of the car on to the track. Hoy, not knowing this, signaled the engineer to give him slack and when the slack came and he uncoupled by hand, the cars thus released ran over the decedent as they continued to back toward the west.
The failure of the lever to lift the pin was owing to a broken clevis between the operating lever and the pin of the automatic coupler, and this condition of the clevis caused the sudden jolt of the car upon which the decedent was walking and threw him off. After the accident, when an examination was made to see why the coupling apparatus did not work, the broken clevis was found with the fractured ends so covered with rust as to show, in the opinion of an expert, that *Page 420 
the break was at least six weeks old. It could have been discovered by the exercise of reasonable care in inspecting. The case was sent to the jury by the trial court and they found a verdict for the plaintiff, but upon appeal to the Appellate Division the judgment was reversed and a new trial granted upon questions of law only, "the facts having been examined and no error found therein."
While according to their order, which controls us, the Appellate Division approved the facts as found by the jury and reversed the judgment of the trial court upon questions of law only, according to their opinion, they reversed upon the ground that the plaintiff's intestate assumed the risk which resulted in his death. That, however, was not a question of law, for it is made a question of fact by statute. They had no power to reverse as matter of law on that ground, because the action was brought under the Employers' Liability Act, which provides that: "The question whether the employee understood and assumed the risk of such injury, or was guilty of contributory negligence, by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence." (L. 1902, ch. 600, § 3.) While the Appellate Division, if not satisfied with the verdict, could have set it aside as contrary to the evidence, it had no power to set it aside as contrary to law for the statute expressly makes the question one of fact. The legislature had the power to do this and the courts must enforce the statute as it is written.
The learned counsel for the defendant relies on an exception taken to the charge in order to sustain the action of the Appellate Division. The trial judge in the body of his charge instructed the jury as follows: "The defendant claims in this case that this car was inspected, that it was inspected by this witness who came here from East Rochester, Wormbull. He says that on the 23rd of September, preceding this 28th when the accident occurred, he examined this car in particular and *Page 421 
O.K.'d it. I say to you if he at that time inspected this car carefully and gave it a thorough inspection and that on the journey from East Rochester after this inspection to this place at Seneca Falls there was something occurred which broke this clevis, if you find that to be the fact, the plaintiff ought not to recover in this action, because the railroad company had very recently had this inspection made, if you find that to be the fact. But the plaintiff claims this was an old break; there was rust over the place where it was broken, and that it was observed by people right there at the time of the accident. So that you will observe that is a question which peculiarly addresses itself to you. It is for you to pass upon those facts and determine, and if you find that this car was not properly inspected, if you determine that question in favor of the plaintiff, then you may infer and find that the defendant was guilty of negligence."
At the close of the charge, Mr. Olmsted, the counsel for the plaintiff, said: "I desire to except to that portion of your Honor's charge where you stated if something occurred between East Rochester and Seneca Falls which caused the break the plaintiff ought not to recover, and in that connection I ask your Honor to say that it is not necessary that the defendant have actual notice of the break or of the condition, but that if the break in this coupler had continued a sufficient length of time so that the defendant ought reasonably to have known about it and remedied it that they are just as liable as though they had had actual notice."
The Court: "Yes, I will so charge and withdraw the charge I made. I think that is for the jury."
Mr. Olmsted: "To say whether the defendant knew or ought to have known of the condition?"
The Court: "It occurred to me when I was giving my charge that the time was so short as a matter of law perhaps I ought to say that they had fulfilled their duty completely, but I think it would be a question for the jury."
Mr. Olmsted: "It might occur that they had actual notice of the defect in the meantime." *Page 422 
The Court: "Yes."
Mr. Williams, the counsel for the defendant: "I wish to except to the modification of the charge and to the charging of the request made by Mr. Olmsted."
If the exception had pointed specifically to the last remark of the counsel for the plaintiff, it would have raised reversible error, because there was no evidence to justify that statement, which the court made its own by assenting thereto. Trial lawyers should remember that it is just as important to hold verdicts as it is to get them and that a request to charge, not founded on evidence but upon mere conjecture, is a hazardous proceeding. The exception, however, in this instance, was not sufficiently specific, for it was addressed to "the modification of the charge" and "to the charging of the request," leaving it uncertain which request was aimed at, assuming that there were two. The modification of the charge was proper. The first request, which was the only one made in form, was also proper. It is claimed that the objectionable remark was not a request but part of a colloquy, occurring aside between court and counsel, and that the assent of the court was not addressed to the jury. Whether it should be regarded as a request or an informal argument to justify the court in its change of position, is left in doubt by the record. Treating it as a request, however, the exception points quite as clearly to the formal request made in connection with the exception to the charge taken by the plaintiff and to the modification which followed as to the informal remark in question. Doubt as to the application of an exception defeats it, for a judgment should stand unless the appellant can point to a definite error raised distinctly by a specific exception. The counsel excepting "must lay his finger on the point" he seeks to raise, so that neither the court nor the opposing counsel will be misled, but both may act advisedly and correct the error if on reflection, after the point is clearly presented, it is regarded as an error. "When it is intended to except to a specific proposition or to particular remarks of a judge in his charge to the jury the counsel making the exception should put his *Page 423 
finger on the proposition clearly and distinctly, beyond any question, and employ language entirely plain so that there can be no doubt as to the real character of the exception or as to what was actually intended. This is essential to enable the judge to correct, modify or change the language used if he deems it proper, and to prevent any misconception or misapprehension as to what portion of the charge the exception was intended to apply." (McGinley v. U.S. Life Ins. Co., 77 N.Y. 495, 497.)
This rule is well established (Brozek v. Steinway Ry. Co.,161 N.Y. 63, 65), but it was not complied with when the exception under consideration was taken and no other is relied upon. Under the circumstances the court could not tell what the counsel for the defendant was aiming at, and it had a right to assume that the exception was taken to the formal request as charged and not to the informal remark.
As the judgment was reversed upon questions of law only when there was no question of law to authorize a reversal, the order of the Appellate Division should be reversed and the judgment of the trial court affirmed, with costs in both courts.
CULLEN, Ch. J., GRAY, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur; WERNER, J., dissents.
Ordered accordingly.