It seems to me that an issue of fact is raised as to whether the work charged for, or any of it, was done in accordance with the precepts theretofore issued, which should not be determined upon motion to vacate the lis pendens, but should be determined upon the return of the precept. I agree that no lien attaches for work directed by the superintendent of buildings not required by nor in conformity with the precept; but, as it is affirmatively alleged that work was done in accordance therewith, I think the order appealed from should be reversed, and the motion denied.

---

UTESS v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department.　March 3, 1909.)

1. MASTER AND SERVANT (§ 280*)—EVIDENCE—ASSUMPTION OF RISK.

Evidence, in an action by a switchman for personal injuries, *held* to conclusively establish that he assumed the risk of danger from obstructions near the track.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 280.*]

2. MASTER AND SERVANT (§ 217*)—ASSUMPTION OF RISK—OBVIOUS DANGERS.

A servant assumes not only the risk incident to his employment, but obvious dangers, and so, if he voluntarily enters into or continues in the service having knowledge or means of knowing of the danger involved, he assumes the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

3. MASTER AND SERVANT (§ 180*)—INJURY TO SWITCHMAN—NEGLIGENCE OF CO-EMPLOYÉS—RIGHT TO RECOVER.

Where, in an action for injuries to a switchman based on negligence in loading coal which fell from a tender and struck plaintiff, there is no proof of the negligence of an engineer or other vice principal in respect thereto, as required by the Barnes act (Laws 1906, p. 1682, c. 657), imposing liability for their negligence, plaintiff must stand on his common-law rights, and, if the coal was improperly loaded, it was the negligence of co-employés for which he cannot recover.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

Appeal from Trial Term, Monroe County.

Action by Max F. Utess against the Erie Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

The action was commenced on the 5th day of July, 1907, to recover damages for injuries sustained by the plaintiff alleged to have been caused solely through the negligence of the defendant.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Adelbert Moot, for appellant.

P. Chamberlain, for respondent.

McLENNAN, P. J. The material facts are not in dispute. The accident which is the subject of this action occurred on the 19th day of November, 1906, at about 8:40 a. m., in the yard or terminal of the defendant, situate in the city of Rochester, N. Y., extending north and

---

south, parallel with and adjacent to the Genesee river. The plaintiff, who at the time was 33 years of age, had been in defendant's employ for about 21 years. He began as water boy, and successively was employed as trackman, construction foreman, sectionman, yard foreman, brakeman, and switchman. During all of such time his place of employment was on the Rochester Division of the defendant, which extends from Rochester to Corning, or in its yard or terminal in the city of Rochester, and, therefore, was familiar with its physical situation and with the manner in which the business of the defendant was conducted therein. At the time of the accident the plaintiff was employed as switchman in the yard, and it was a part of his duty to flag trains coming into it, and to indicate to the engineers of such trains when they could safely take the track leading to the station, and in the performance of such duty it was necessary for the plaintiff to go to a point in the yard at such distance from the station as would enable the engineer of an incoming train upon getting such signal to stop and so avoid coming in collision with any train which might be at the station. The plaintiff was not required to stand at any particular distance from the station. He was at liberty to select such place as he saw fit, within reasonable limits, except that it was necessary for him to be on the right-hand side of the train in order that his flag could be readily seen by the engineer.

It appears that, at the place selected by the plaintiff (he might have selected any other place within a reasonable distance in either direction) at which to stand while flagging the train in question, there was only a distance of about seven feet from the outside rail of the track on which a passenger train was approaching from the south and the bank of the Genesee river, and that at such place there were some railroad rails piled between the track and the river and parallel with the tracks, and also a couple of piles of earth, about two wheelbarrow loads in each, which had been left or made by defendant's employés when engaged in electrifying or preparing to electrify its road at that point. The plaintiff stood about four feet from the track upon which the train was approaching. He signaled the engineer to stop, because another train was occupying the track at the station. The engineer slowed down his train a little, when the plaintiff discovered that the train at the station had taken the siding and that the track was clear. He then signaled the engineer to proceed, which he did in the usual manner, going at the rate of 25 to 30 miles per hour. As the tender passed the plaintiff he discovered some lumps of coal falling from it, and one piece struck him in the face with such force as to daze him. He staggered backward, and, in attempting to regain his footing, stumbled over the piles of dirt or rails, and in some manner came in contact with one of the moving cars, which struck him upon the shoulder. He was thrown down, his arm was crushed in such manner as to make amputation necessary, and he sustained other very serious injuries.

The plaintiff, who was the only witness called who saw the accident, testified upon his direct examination as follows:

"Q. Did you notice anything in regard to the condition of that tender upon the train as it came in? A. Not until I saw some coal rolling off of it. Q. What did you notice in that regard? A. As the front end of the engine got

to me, I gave the engineer a cross-over signal, and of course the train was coming right along, and about to me, and after I gave the engineer the cross-over signal I noticed some coal coming off from the tank. Q. The tender that is attached to the engine? A. Yes; and I partly turned my back toward the engine trying to avoid the coal, and as I did so I just about got my back turned toward the engine and I got struck with a piece of it on the side of the face, which dazed me, and I started to tumble down this bank. At that time I began staggering around, and there was a couple of piles of dirt laid there. I should judge just a couple of wheelbarrow loads in a pile, where they had been setting up electric poles, and mixing the concrete, and I staggered around on one of those piles of dirt, and the next thing I knew I got struck on the left shoulder, and that is as far as I can tell anything about it. Q. Describe to the jury the condition of that tank as you observed it when you saw the coal falling off—the condition of the coal on the tank. A. It would be rather a hard matter to say, although as this coal rolled off, it all happened so quick it didn't give me much time to look the tank over, although as the coal rolled off I saw these pieces rolling off of the top of the tank, and whether the piece that struck me came off from the top of the tank or out of the gang-way, it was impossible to say. The tank was full, as near as I could see, what I could see of it during that instant. The next I knew anything to remember anything, I was up at the hospital."

The witness on cross-examination states that he did not know who had left the piles of dirt or the pile of rails upon the defendant's right of way; that he did not know whether it was done by a telephone line, by a telegraph line, or the railroad line; and also upon cross-examination he says:

"As to this piece (of coal) that hit me, I couldn't tell whether it came from the top of the engine or from the gangway."

And again, on redirect examination, the witness says:

"The others (pieces of coal) that I dodged came from the car. This was almost instantaneous. I couldn't say whether it was coming from the gangway or the top of the tender."

Other witnesses called by the plaintiff testify that the tender was chuck full of coal; that the coal lay all over the top of the tank on the river bank side five or six inches over the top of the board at the side. One witness called by the plaintiff testified on cross-examination that all the tenders come down there chuck full of coal, and that this one was just like the rest; that there was no difference in the way this tender was loaded from the way tenders are loaded generally; that the one in question was like all the rest.

The foregoing is practically all the evidence which has any bearing upon the question of defendant's negligence. The court expressly held that the action was not brought under the employer's liability act (Laws 1902, p. 1748, c. 600); therefore, no rights accrued to the plaintiff by virtue of its provisions. Indeed, the only allegation of negligence contained in the complaint is:

"That on and prior to the 3d day of November, 1906, the defendant had unlawfully, carelessly, and negligently allowed to be placed and to accumulate in its railroad yards aforesaid at Rochester, N. Y., piles of railroad rails and dirt which blocked up the ways and means necessary to be used by the plaintiff in the performance of his work as a switchman and flagman aforesaid, * * * and that the tender, so called, attached to said engine had been overloaded with coal by the defendant to be used in connection with the operation of said engine attached to said train of cars."

There is no allegation to the effect that the plaintiff did not have full knowledge of the alleged obstructions existing at the place which he selected from which to flag the incoming train, or that he did not have in mind the exact situation at the time of and immediately prior to the accident. It was broad daylight. The defects or dangers, if any, were not latent, but were obvious and in plain sight. At the time the place was selected (and such place was selected by him in his discretion) any other place in that immediate vicinity would have answered his purpose just as well.

The evidence, we think, conclusively establishes that the plaintiff assumed whatever risk or danger resulted from the obstructions referred to, and therefore we conclude that, in so far as it is sought to charge the defendant with liability because of negligence in permitting the piles of railroad rails and of dirt to be upon its right of way, the plaintiff has failed to establish a cause of action, because he assumed the risk incident to or resulting from the condition which is described in the evidence, when we remember that he can obtain no aid from the employer's liability act. A servant assumes not only the risk incident to his employment, but obvious dangers, and so, if he voluntarily enters into or continues in the service, having knowledge or means of knowing the dangers involved, he assumes the risk. Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Kennedy v. Manhattan R. R. Co., 145 N. Y. 288, 39 N. E. 956; Huda v. American Glucose Co., 154 N. Y. 474, 48 N. E. 897, 40 L. R. A. 411.

As to the other charge of negligence, to wit, that the coal which fell from the tender and struck the plaintiff, and which may be regarded as the proximate cause of the injury, was improperly and negligently loaded into or upon such tender. There is not a scintilla of evidence to indicate by whom such coal was loaded, or whether it was loaded at Corning or Avon, or at some other point on the Rochester Division of defendant's railroad. There is no suggestion in the evidence that the engineer, who was in physical control or direction of the engine, had any duty to perform in respect to loading such coal, or as to inspecting the same after the loading was completed. There is not a suggestion based upon the evidence in the case that the engineer did not discharge every duty imposed upon him in a prudent and careful manner. So that the "Barnes Act," so called, being chapter 657, p. 1682, of the Laws of 1906, can have no bearing upon the issue of defendant's negligence in respect to the loading of the coal. So far as this case is concerned, there is no evidence to indicate that the vice principal (the engineer) was negligent in any manner. While the "Barnes Act," so called, declares in substance that if a person is injured while in the employment of a railroad corporation because of the negligence of an engineer while in physical control of a locomotive engine, and also because of the negligence of many other persons named in the act who are declared to be vice principals, it is necessary that the evidence should point out such vice principal and establish that he was guilty of the negligence which caused the injury. Otherwise no advantage can result to a plaintiff from the provisions of the act. Having failed to make such proof in this case, the plaintiff must stand upon his common-law rights, and so it is hardly nec-

essary to suggest that, if the coal was improperly loaded into the ten-. der, such improper loading was the negligence of a co-employé with· the plaintiff, and for which the defendant is not liable.

There is no doubt as to the theory upon which this case was tried· and submitted to the jury, as a single paragraph taken from the charge of the learned trial court fully illustrates. The court said:

"He (the plaintiff) must show to your satisfaction, by a fair preponderance· of evidence, that the defendant was negligent—that is, that it did not prop- erly load that tender; that it did not furnish him with a reasonably safe place to work; that it did not exercise due care in loading and operating that engine. If you shall find from this evidence that the defendant did exercise· due care in that regard, if you shall find that it was in no way negligent in the manner in which it operated that train and loaded that train, and in the place that it furnished for this man to work, then your verdict must be for· the defendant."

Counsel for the appellant upon all the evidence moved for the di- rection of a verdict in favor of the defendant, and excepted to the sub- mission by the court of the question of defendant's negligence upon either ground to which attention has been called. We conclude that upon all the evidence there was no question presented· which tended to establish actionable negligence on the part of the defendant, in- dependent of the employer's liability act, which is not available to the plaintiff, and because the evidence wholly fails to make the provisions of the "Barnes Act," so-called, applicable.

We conclude, therefore, that the judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed and new trial granted, with costs to· appellant to abide event.

SPRING, WILLIAMS, KRUSE, and ROBSON, JJ., concur in· result, reversing the judgment and order and granting a new trial, on the ground that the court erred in submitting to the jury as a ground of negligence the question of an unsafe place by reason of the piles of railroad rails and dirt, and declining to charge, as requested by de- fendant, on that subject, without passing upon the other questions· raised.