### BODETTE v. FOSTER–ARMSTRONG CO.

(Supreme Court, Trial Term, Monroe County. March 30, 1909.)

1. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—ASSUMED RISK.

    Plaintiff, a stringer in a piano factory, was injured by coil wire striking him as it was being unwound from a reel. Plaintiff had been in defendant's employ for six years, and knew that there was a tendency of the wire to fly back; he having been previously injured thereby. *Held*, that plaintiff assumed the risk; the dangers being obvious.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

2. MASTER AND SERVANT (§ 297½*)—EMPLOYER'S LIABILITY ACT—INJURIES TO SERVANT—TRIAL.

    Under the employer's liability act, providing that whether an injured servant has been guilty of contributory negligence or has assumed the risk is a question of fact, subject to the powers of the court in a proper case to set aside a verdict as contrary to the evidence, where a servant assumed the risk of the danger from which he was injured, the court will set aside a verdict for plaintiff, whether his action was based on the master's common-law liability or the employer's liability act (Laws 1902, p. 1748, c. 600).

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 297½.*]

Action by Nelson Bodette against the Foster-Armstrong Company. On motion to set aside a verdict for plaintiff and for a new trial. Granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Walter S. Hubbell, for the motion.

Lynn Brothers, opposed.

BENTON, J.  Plaintiff recovered a verdict of $5,000 against the defendants.  The alleged negligence consisted in furnishing a reel from which wire was unwound as used in stringing piano frames. This reel was open, and it is claimed that it should have been protected or guarded by a sheet metal or other casing, so as to prevent the free end of the coil wire striking back and hitting the plaintiff, whereby he was injured.  Plaintiff was a stringer in the defendant's employ, and had been about six years in Rochester and about nine months at Despatch.  His duty was to put the wires upon the frames of the pianos. These wires formerly came in pound packages, and later in five-pound packages.  Formerly, when the pound package was used, it was unwound from a reel whose sides were inclosed by a sheet metal surrounding the base of the reel and extending upwards four or five inches within a short distance of the top covering of the reel.  Through the space between the casing and the top, the wire was drawn as needed by the operator.

Defendant claimed the wires were so inclosed to prevent the coil spreading over the base of the reel, thereby falling and becoming entangled, thus delaying the work.  Plaintiff, on the other hand, alleges that it was a protection which prevented the uncertain and elastic coil of the wire, after the portion put on the frame had been cut off, from flying back and hitting the operator.  There is no doubt but that it had that effect to a greater or less extent.  The sheet metal inclosure was discarded; the diameter of the reel being enlarged, so that the tendency of the wire to spread and fall over the base was prevented.

Plaintiff had extended experience with these reels of both kinds during his employment.  He was thoroughly conversant with the action of the reel and of the wire.  He had been hit by the wire on numerous occasions, and was once hit in the head before the accident which impaired the use of his eye.  It must be found beyond dispute that he was as thoroughly familiar with the working of the reel and of all the hazards incident to its use as any one could well be.  He certainly knew as much about it as his employer did or could know. It was a common thing for stringers to be hit upon the hand or arm by the irregular motion of the wire.  Its elasticity and tendency to fly were matters of knowledge by those doing this work.  There is no evidence of any protest or criticism of this appliance.  There is a vague reference to something being said as to the covering being no longer used; but whether this was said in criticism or commendation, or otherwise, is nowhere apparent.

Counsel for the plaintiff bases his contention upon the authority of Graves v. Stickley Co., 125 App. Div. 132, 109 N. Y. Supp. 256, and contends that continuing in an employment with knowledge of the risk of injury is an assumed risk which must be submitted to the jury, if the evidence so warrants, to determine whether it was a part of the original contract of service expressed or implied, and that if the jury find in favor of the employé upon such question, however obvious the

risk, and however great and comprehensive his knowledge of the risk of injury, and however long his experience and active his services in and about the dangers originating the risk, still the employer is liable. An interesting question is suggested, under the authority of Johnson v. Fargo, 184 N. Y. 379, 77 N. E. 388, 7 L. R. A. (N. S.) 537, as to whether or not an employé may either expressly or impliedly contract to assume the risk.

To succeed plaintiff must either establish that the failure to guard the reel was a defect in the ways, works, and machinery of the defendant for which it was liable under the employer's liability act (Laws 1902, p. 1748, c. 600), or that defendant was negligent in not providing with reasonable care and diligence fit tools or appliances for him to work with. Plaintiff contended under the employer's liability act. Defendant denied that the phraseology of the act comprehended the appliance herein referred to. Practically it makes little difference, as at most it becomes a matter of practice only; for at common law plaintiff should have been nonsuited. This plaintiff's counsel concedes. Under the employer's liability act:

"The question whether the employé understood and assumed the risk of injury or was guilty of contributory negligence by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact, subject to the usual powers of court in a proper case to set aside a verdict rendered contrary to the evidence."

In either view plaintiff cannot succeed.

"A servant assumes not only the risk incident to his employment, but obvious dangers; and so, with the voluntary continuance in the service, having knowledge of the risk or means of knowing the dangers involved, he assumes the risk." Utess v. Erie E. R. Co. (4th Dept., March 3, 1909) 115 N. Y. Supp. 389; Rooney v. Brogan Construction Co., 194 N. Y. 33, 86 N. E. 814; Clark v. N. Y. C. & H. R. R. Co., 191 N. Y. 416, 84 N. E. 397.

The verdict is contrary both to the law and to the evidence, and is set aside and a new trial granted. So ordered.