CHERNICK v. INDEPENDENT AMERICAN ICE CREAM CO.

(Supreme Court, Appellate Division, First Department.   December 1, 1911.)

MASTER AND SERVANT (§ 278*)—INJURIES—EVIDENCE—SUFFICIENCY.

    In an action by an injured servant, a verdict finding the master guilty of negligence *held* against the weight of evidence, so that a new trial was properly granted.

    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

Appeal from Appellate Term.

Action by Philip Chernick against the Independent American Ice Cream Company. From a judgment of the Appellate Term reversing an order setting aside a verdict for plaintiff and granting a new trial (72 Misc. Rep. 79, 129 N. Y. Supp. 694), defendant appeals. Judgment of Appellate Term reversed, and order affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, MILLER, and DOWLING, JJ.

Walter G. Evans, for appellant.
Charles S. Rosenthal, for respondent.

LAUGHLIN, J.   On the 4th day of May, 1909, the plaintiff was in the employ of the defendant, in charge of one of its delivery wagons, and, while standing on the tailboard of the wagon in the performance of his duty in preparing to deliver cracked ice to a customer, one of his feet broke through a hole in the tailboard of the wagon, which had recently been covered with a piece of board about an inch thick in an endeavor to repair it, and this action was brought to recover damages for personal injuries sustained thereby. The negligence charged in the complaint was failure on the part of the defendant to maintain the tailboard of the wagon in a safe condition, and not having the board covering the hole sufficiently nailed or fastened to withhold the weight of plaintiff while standing thereon in the performance of his duties. Plaintiff alleged due service of a notice in due form pursuant to the provisions of the employer's liability act, so called. Chapter 600, Laws 1902, § 2, now chapter 31, Consolidated Laws, § 201. The answer put in issue the allegations of the complaint with respect to negligence and freedom from contributory negligence, and set up as separate defenses that the injuries were caused by the negligence of plaintiff, or of a coservant or of a third party, and without negligence on the part of the defendant, and that plaintiff assumed the risk.

On the trial plaintiff was required, at the close of the evidence, to·

---

*For other cases see same topic & § NUMBER in Dec. & Am. Dig*. 1507 to date, & Rep'r Indexes.

elect whether to stand on a cause of action at common law, or under the employer's liability act, and he elected to claim only under the statute. Although the question is not presented for decision, it is appropriate to observe at this point that the court erred in requiring this election, for by virtue of the decision of the Court of Appeals in Payne v. N. Y. S. & W. R. R. Co., 201 N. Y. 436, 95 N. E. 19, plaintiff had but a single cause of action, no matter whether the breach of duty was a breach of duty at common law, or of one imposed by statute. The court thereupon submitted the case to the jury under the employer's liability act, on the assumption that the tailboard constituted "ways, works or machinery" of the defendant within the scope of the statute, and on that theory gave the plaintiff the benefit of the provisions of section 3 of the employer's liability act (now section 202 of chapter 31 of the Consolidated Laws), which requires that the question as to whether or not an employé assumes the risk be submitted to the jury. The trial court, however, after the rendition of the verdict, in the exercise of the discretion expressly conferred by the provisions of said section 3 of the employer's liability act, set aside the verdict as against the weight of the evidence, in so far as the jury found that the plaintiff by continuing in the employ of the defendant and thus using the tailboard with full knowledge of its condition did not assume the risk of injury therefrom, and in an elaborate opinion set forth the reasons for thus setting aside the verdict.

One of the justices of the Appellate Term voted to affirm the order, but the majority of the court voted for reversal, on the theory, as disclosed by the opinions, that, since the statute required that the question of assumption of the risk be submitted to the jury as one of fact, there was no propriety in setting aside the verdict, rendered on uncontroverted evidence in the main, on the theory that the finding that plaintiff by merely continuing in the employ of the defendant with full knowledge of the danger did not assume the risk was against the weight of the evidence. Attention was drawn in one of the prevailing opinions at the Appellate Term to the last sentence of said section 3 of the employer's liability act, as supporting the views of the majority of the court. That sentence is as follows:

"An employé, or his legal representative, shall not be entitled under this act to any right of compensation or remedy against the employer in any case where such employé knew of the defect or negligence which caused the injury and failed, within a reasonable time, to give, or cause to be given, information thereof to the employer, or to some person superior to himself in the service of the employer who had intrusted to him some general superintendence, unless it shall appear on the trial that such defect or negligence was known to such employer, or superior person, prior to such injuries to the employé."

The argument based upon the provisions of this sentence, as we understand it, is that the Legislature therein contemplated that an employé might have a cause of action by virtue of the provisions of that act, even though what might be deemed a reasonable time had elapsed after he had knowledge of the defect or negligence, which ultimately caused the injury, and it was only upon that theory that it was provided that, if the employer did not have knowledge of the defect or

negligence, the employé should not be entitled to recover unless the employé within a reasonable time after acquiring such knowledge informed, or caused information thereof to be communicated to, his employer or some person superior to himself in the service of the employer intrusted with some general superintendence. The Legislature has declared the question of assumption of risk, at least when it arises under the employer's liability act, so called, to be one of fact (section 3 of Act, supra, and Clark v. N. Y. C. & H. R. R. R. Co., 191 N. Y. 416, 84 N. E. 397; Ovelsen v. Howes Transportation, etc., Co., 139 App. Div. 158, 123 N. Y. Supp. 649), with the burden on the defendant (Dowd v. N. Y. & O. W. R. R. Co., 170 N. Y. 459, 63 N. E. 541; Graves v. Stickley Co., 125 App. Div. 132, 109 N. Y. Supp. 256, affirmed 195 N. Y. 584, 89 N. E. 1101); and in requiring that the question of assumption of risk be submitted to the jury the Legislature contemplated that the jury might find that the employé should not be held to have assumed the risk, even though he continued in the employ for a long period after full knowledge of the danger; but it also contemplated that the jury might find against the employé on that question, and, in the event that the jury should find in his favor, it provided that the court might exercise the authority expressly conferred and set aside the finding of the jury and grant a new trial.

In the case at bar the plaintiff established no cause of action at common law. According to his testimony, about a week prior to the accident, and, according to testimony given on the part of the defendant, only two days before the accident, the wagon while he was driving collided with another wagon, and a hole about five or six inches square was stove in the tailboard near one end. Plaintiff reported the collision to the president of the defendant. At this point there is a conflict of testimony. The president of the defendant says that he directed plaintiff to take the wagon to the blacksmith shop to have the tailboard repaired, but the plaintiff denies this, and testified that on the morning of the day he was injured the president of the defendant had a board about 12 inches long and 6 inches wide and an inch thick nailed over the hole, in his presence. The tailboard was about 4 feet long and about 10 or 12 inches wide. It was attached to the wagon box at the bottom by hinges so that it could be let down, forming a continuation of the floor of the wagon box, and then held in place by chains. Plaintiff testified that, after the board was nailed over the hole, he deemed it unsafe, and so informed the president of the defendant, who thereupon tested it by having a man heavier than plaintiff throw his weight upon it by jumping, and it stood the test, at which the president of the defendant remarked, "See, that is all right. It cannot go;" that he then took and used the wagon until noon of the same day, when he again drew the attention of the president of the defendant thereto, stating that it was in bad condition, and that he was afraid to work on it; that the president replied, "Listen, you know how it is now—it is very bad time—business is very bad. Wait, and soon the business will get a little bit better, and I will put up a new tailboard;" that he then stated to the president that the wagon was across the way in the blacksmith shop, and that it would not take long

to put on a new tailboard, and it would cost only $2, and said, "Put on a new tailboard and we will save trouble. I am afraid to work on this tailboard;" and that the president of the defendant replied, "Well, it's no use talking—wait until business gets better and I will put on a new tailboard." Here, according to the testimony of the plaintiff, there was no assurance that repairs would be made at once, or even within a reasonable time, and there was no new representation that the tailboard was safe, but, on the contrary, the inference would be that the president of the defendant agreed with the plaintiff that a new tailboard should be provided. In these circumstances it is perfectly plain that under the principles of the common law, with the same knowledge on his part as was possessed by the president of the defendant, the plaintiff assumed the risk in continuing in the employ of the defendant and using the tailboard.

The Court of Appeals has not yet, so far as we are able to discover, decided whether the rule of evidence with respect to assumption of risk prescribed in section 3 of the employer's liability act applies to all actions for negligence whether predicated on a breach of a common-law or statutory duty, a question upon which there is a difference of opinion on the part of the members of this court (Ward v. Manhattan R. R. Co., 95 App. Div. 437, 88 N. Y. Supp. 758, and Curran v. Manhattan R. R. Co., 118 App. Div. 347, 103 N. Y. Supp. 351) and of the Appellate Division in the Third Department as well (O'Neil v. Karr, 110 App. Div. 571, 97 N. Y. Supp. 148; s. c., 115 App. Div. 881, 100 N. Y. Supp. 1133, affirmed 190 N. Y. 509, 83 N. E. 1128; Bushtis v. Catskill Cement Co., 128 App. Div. 780, 113 N. Y. Supp. 294, affirmed 198 N. Y. 548, 92 N. E. 1079). The affirmances in the Court of Appeals in the last two cases were without opinion, and the record shows that other points were urged upon which the affirmances may have been based. In view of the recent decision of the Court of Appeals in the Payne Case, supra, the question becomes quite important, for if that rule of evidence be limited to breaches of statutory duty, which may be submitted to the jury with breaches of duty at common law, it will require very clear instructions to enable the jury to discriminate between the different rules of evidence with respect to assumption of risk, depending on whether they find the breach to have been of a common-law or statutory duty. In this connection it may be observed that a similar important question will arise with respect to whether the change in the rule of evidence made by section 202a (Laws 1910, c. 352) of the labor law, by which contributory negligence becomes matter of defense to be so pleaded and proved, applies to all breaches of duty under the labor law. We do not, however, deem it necessary at this time to decide that question or to express a further opinion thereon, for in either view we think the trial court was justified in setting aside the verdict.

It was doubtless more convenient for the plaintiff to step on the tailboard where it had been damaged, but this was not necessary. He could have performed his duties by avoiding stepping on the tailboard at that point. The trial court, therefore, on the assumption that the rule of evidence prescribed by the employer's liability act applied and

that the case required submission to the jury of the assumption of risk, the court was fully warranted in setting aside the verdict. That was the only question presented to the Appellate Term for review, and it is the only question brought here for decision by the appeal; but we do not wish to be understood as assuming that the notice served by the plaintiff complied with the requirements of section 2 of the employer's liability act (now section 201 of chapter 31 of the Consolidated Laws), for it is, at least, doubtful whether it states the cause of the injury, which was the giving away or breaking of the tailboard of the wagon, and not the mere fact that it was in an unsafe and dangerous condition, which without its giving way or breaking would not have harmed the plaintiff. See Logerto v. Central Building Co., 198 N. Y. 390, 91 N. E. 782.

It follows, therefore, that the order of the Appellate Term should be reversed, with costs, and the order of the Municipal Court affirmed, with costs.

· DOWLING, J., concurs.

INGRAHAM, P. J. I concur in the conclusion of Mr. Justice LAUGHLIN upon the ground that in this case there was no question for the jury. Whether the action was under the employer's liability act, being article 14 of the labor law (chapter 36 of the Laws of 1909 [Consol. Laws 1909, c. 31]) or at common law. I do not think that the finding that defendant was negligent was sustained by the evidence. It does not appear that the tailboard of this wagon was provided for the purpose for which it was used. It was a simple appliance and a part of the wagon in common use. The plaintiff knew that this tailboard had been broken and repaired. He thought a new tailboard should be supplied, and so apparently did the president of the defendant. So far as appears, the tailboard was entirely safe if used as a tailboard. All the plaintiff had to do to avoid injury was not to step upon the part that had been repaired by nailing on a piece of board to enable it to be used on this particular day. The accident was directly the result of the plaintiff stepping on this portion of the board that had been injured of which he knew as much as anybody else.

I think under those circumstances that, irrespective of contributory negligence or assumption of risk, the verdict that the defendant was negligent was against the weight of evidence, and justified the court in setting it aside.

McLAUGHLIN and MILLER, JJ., concur.