(102 App. Div. 125.)

### BAKER v. EMPIRE WIRE CO.

(Supreme Court, Appellate Division, Fourth Department. March 1, 1905.)

1. DEATH OF EMPLOYÉ—CONTRIBUTORY NEGLIGENCE.

The failure of decedent, who was night foreman in a factory, to replace cleats on a gangway to prevent employés from slipping when passing over the way, prevents recovery for his death, resulting from the defective condition of such cleats.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 710–722.]

2. SAME—NEGLIGENCE OF DEFENDANT.

The floor of a portion of defendant's factory was three feet lower than that of another portion; and planks twelve feet long were used as a gangway over which loaded trucks were run, cleats being placed on the planks to prevent employés from slipping. While helping to push a loaded truck up the planks, decedent, who was defendant's night foreman, slipped, and fell to the floor by the side of the planks, receiving injuries resulting in his death. The gangway had been in use as so maintained for many years, with no previous accidents, the employés sometimes walking on the planks and at other times on the

floor at the side. *Held*, that the failure of defendant to have a railing on the sides of the gangway was not negligence.

**8. SAME—REVIEW—WEIGHT OF EVIDENCE.**

Employer's Liability Act, Laws 1902, p. 1748, c. 600, requires the submission to a jury of the question whether an employé assumed the risk of his injuries, and provides that the verdict on such question shall be subject to review on the facts. *Held*, that a verdict for plaintiff will be set aside as against the evidence, where it is shown that decedent's death resulted from his slipping from a gangway between two rooms, the floor of one being three feet lower than that of the other; that decedent slipped because of defective cleats on the gangway; that it was decedent's duty, as foreman, to replace or repair defective cleats; and that he had been employed in the factory for more than three years.

Appeal from Special Term, Oneida County.

Action by Myra E. Baker, administratrix of the estate of Edward F. Baker, deceased, against the Empire Wire Company. From a judgment for plaintiff for $3,502.63, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

John D. McMahon, for appellant.
Howard C. Wiggins, for respondent.

HISCOCK, J. Plaintiff's intestate was employed in defendant's factory, and upon the night of July 15, 1903, slipped and fell upon some cleats upon a gangway therein, receiving injuries which caused his death. This action was brought under the provisions of the "Employer's Liability Act," so called (chapter 600, p. 1748, Laws 1902), and, amongst other things, it was claimed that the defendant was negligent in not placing a railing upon each side of the gangway, and also in allowing to become worn and defective cleats which had been placed thereon for the purpose of preventing slipping. We think that the judgment recovered by plaintiff is affected by at least three errors which necessitate its reversal. In our opinion, it was the duty of the intestate to have replaced the cleats if they had become worn and defective, and his failure so to do bars a recovery by his representative; secondly, it was error for the trial judge to permit the jury to find negligence because of the absence of hand rails upon the gangway; and, finally, the verdict of the jury that the intestate did not understand and assume any risks incident to the latter's construction and use was clearly against the weight of evidence. The floor of a portion of defendant's factory was about three feet lower than that of another part. It was necessary to move truck loads of wire which defendant was engaged in manufacturing from one portion to the other, and a gangway had been constructed for purposes of passageway. This consisted of three planks, which were each about 12 inches wide and about 12 feet long, placed side by side, leading from one floor to the other. In the process of manufacture there was used a somewhat greasy fluid called "dip," and to some extent this became spattered and tracked over the floor, making it more or

less slippery. The loads of wire which were moved upon trucks from one portion of the factory to another over the gangway were quite heavy, and cleats had been put upon the middle plank to prevent the slipping of employés as they drew them up the incline. There never had been any railing upon either side of the gangway, and in the constant use of the latter employés sometimes walked its entire length and at others stepped off and on at the side. At the time of the accident, as the jury were fairly permitted to find, the intestate was helping to push a truck load of wire up the incline, when his foot slipped upon a cleat, and he fell off upon the side, receiving the injuries resulting in his death. It was also permissible for the jury to find that these cleats had become worn and slippery, so as not fully to serve the purpose of preventing slipping. The intestate had been continuously employed in the defendant's factory from the spring of 1900 to the time of the accident, and from July 21, 1902, had been the night superintendent or foreman of the factory, having full charge thereof at that time. As such he had the right to and did hire and discharge men and order the repair and fixing of machines. At various times he had repaired the incline itself, and renewed the cleats thereon. In the course of his work he repeatedly passed up and down over this gangway, and upon the evening in question, before the accident, had been up and down several times. There were on hand in the factory cleats with which, if necessary or proper, to replace those in use. While other employés had occasionally slipped upon the gangway, it does not appear that this accident had been in any manner caused or aggravated by the absence of hand rails. The construction of the gangway and the general conditions in the shop remained without change from before the date of intestate's employment to the time of the accident.

Upon these general facts we are led to sustain appellant's assignments of error in the respects already stated. The testimony leaves no doubt that the plaintiff's intestate, as night superintendent or foreman, was invested with and exercised general superintendence and authority over defendant's shop, and that his powers and duties included the maintenance in a proper degree of repair and efficiency of the various machines and appliances therein used. His appreciation of these powers with respect to this gangway is evidenced by what he had previously done in the way of replacing the cleats thereon. While it is true that he had sometimes done this while at work in the daytime, when another superintendent was in charge, the entire evidence fully demonstrates that he was charged with the power and duty of doing this at night, while he was superintendent, if it became necessary. And of course there can be no doubt that he had full opportunity to observe and know their condition and appreciate the necessity for replacing them if it existed. We therefore have it that, if the gangway was in a defective condition at the time of the accident, it was because intestate had failed to discharge the powers which had been delegated to him by his employer, and, if the defendant was negligent in allowing the cleats to remain after they were worn and

defective, the immediate cause of this negligence was the failure of the intestate himself to perform his duty. It needs no citation of authorities to sustain the proposition that the plaintiff may not recover from defendant for a negligent condition which was permitted, and not remedied by her intestate in violation of his duty. The trial judge charged:

"That if the jury find that the accident was caused by any defect in the incline or runway which arose from or had not been discovered or remedied owing to the negligence of a person in the service of the defendant and intrusted by the defendant with the duty of seeing that the ways and works of the defendant were in proper condition, and the person so intrusted by the defendant on the night and at the time of the accident was the plaintiff's intestate, the verdict must be for the defendant."

It is difficult to regard the absence of railings as a proximate cause of the accident. Upon plaintiff's theory the slipping and falling of her intestate was due to the slippery and defective condition of the cleats. And the most that can be said of the proposed railing is that it might have prevented the intestate from falling over the side of the gangway. If, however, we do assume that the absence of the railing did in a legal sense cause or contribute to the accident, we believe that in the exercise of ordinary care and prudence the defendant was not liable for not having placed one there. The structure was a very simple one, at its highest point only three feet from the floor. A railing high enough to be of any service would have been an obstruction in defendant's shop, and in the use made by its employés of the gangway itself. It does not appear that in the course of years and under constant usage any accident had resulted from the lack of a railing. Defendant was only bound to anticipate natural results and exercise ordinary care. Within these limits, at least, it was not under any obligation to change for the benefit of the intestate the form of its gangway which was in existence when the latter entered its employ, and we think that the trial judge allowed the jury to impose too onerous a responsibility and liability upon the defendant in permitting them to find that it was negligent in this respect.

It was strenuously insisted in behalf of the defendant upon the trial, as it is upon this appeal, that plaintiff's intestate, as matter of law, fully understood and assumed any risks incident to the construction and condition of the gangway. The trial justice, however, held that under the employer's liability act the question whether the employé did so understand, appreciate, and assume these risks was one of fact for the jury. The act does provide for the submission to the jury in an action for personal injuries of the question of assumption of risk. It further provides, however, that the verdict of the jury upon such a question shall, as in other cases, be subject to review upon the facts, and that it may be set aside as against the weight of evidence. The verdict in this case upon that point was and is against the weight of evidence. The gangway involved was an appliance of the most simple character. Any person of ordinary intelligence could appreciate that when cleats became rounded and worn they would not offer the same resist-

ance to slipping as when new and square. The intestate was constantly up and down over this passageway for a period of months. His position charged him with the duty of observing the conditions which existed, and it is impossible that he should not have appreciated fully all of the risks of slipping which were incident to the conditions as they existed upon the night of the accident. We have no doubt that prior to the passage of the act in question it would have been the duty of the trial court to dismiss plaintiff's complaint as matter of law (Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56), and, giving to the statute invoked by plaintiff the full scope and meaning claimed by her, it was against the weight of evidence for the jury to render a verdict in her favor upon this point. The judgment and order should be reversed upon the law and facts.

Judgment and order reversed upon the law and facts, and a new trial granted, with costs to the appellant to abide event. All concur.