CHERNICK v. INDEPENDENT AMERICAN ICE CREAM CO.

(Supreme Court, Appellate Term. May 22, 1911.)

MASTER AND SERVANT (§ 288\*)—RISKS ASSUMED BY SERVANT—KNOWLEDGE OF DEFECTS—QUESTION FOR JURY.

Under Labor Law (Consol. Laws 1909, c. 31) § 202, providing that the question of whether an employé understood and assumed the risk of an injury shall be one of fact, and that an employé or his representative

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall not be entitled to any remedy against the employer where the employé knew of the danger which caused the injury and failed to inform the employer, an employé's continuance in employment after knowledge of the defect does not as a matter of law show that he assumed the risk, but the question is one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

Seabury, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Philip Chernick against the Independent American Ice Cream Company. From an order setting aside the verdict and granting defendant a new trial, plaintiff appeals. Order reversed, and verdict reinstated.

See, also, 66 Misc. Rep. 177, 121 N. Y. Supp. 352.

Argued before SEABURY, BIJUR, and PAGE, JJ.

Charles S. Rosenthal, for appellant.

Raymond D. Fuller (Edward F. Lindsay, of counsel), for respondent.

BIJUR, J. Plaintiff sued, under the employer's liability provisions of the labor law (Laws 1909, c. 36, §§ 200–204 [Consol. Laws 1909, c. 31]), for personal injuries caused by the breaking of a tailboard on defendant's wagon while plaintiff was employed thereon in defendant's business. Defendant repaired the defect temporarily, had a heavy man jump on the tailboard, and, when it did not break, said to the plaintiff, "See, that is all right." Plaintiff then, though reluctantly, used the wagon during the greater part of a day; but finally brought it back, and said, in substance, that defendant would have to have a new tailboard put on, as the repaired one was dangerous. Defendant replied that, as business was dull, he did not wish to go to the expense at that time, but, as soon as business picked up, he would get a new one. Later on, during the same day, the accident occurred.

The learned trial judge set aside the verdict of the jury in plaintiff's favor as against the weight of evidence, basing his decision flatly on the theory expressed in these words of the opinion:

"The case in this aspect falls within the principle that where a servant continues in the service of the employer with knowledge of existing conditions and whatever dangers there may be involved therein, or where they are just as open and obvious to the servant as to the master, the servant assumes the risk of such service."

There can be no doubt that under the law as it existed prior to the employer's liability act (Laws 1902, c. 600), following the line of decisions which began in England with that of Lord Abinger in Priestly v. Fowler, 3 M. & W. 1 (1837), and, in this country, with Murray v. South Carolina R. Co., 1 McMul. *385, 36 Am. Dec. 268 (1841), and Farwell v. Boston & Worcester R. Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339 (Shaw, C. J., 1843), mere continuance by a servant in his master's employ after knowledge of danger from a defect

in machinery or ways would inevitably have been held to imply assumption of risk of injury by him as matter of law. This conclusion in the early cases dealing with the subject as one of "first impression" was not arrived at as a necessarily logical deduction from contractual or other relations existing, but was derived largely from the argument ab inconvenienti. Indeed, even at the present time, the authorities are not a unit on the precise basis for the theory of the assumption of risk; i, e., whether it be founded on contract express or implied, waiver, or the maxim, "Volenti non fit injuria," in the realm of torts. See Dowd v. N. Y. O. & W. Ry. Co., 170 N. Y. 459, 472, 63 N. E. 541, and Drake v. Auburn City Ry. Co., 173 N. Y. 466, 473, 66 N. E. 121.

I am of the opinion, however, that section 202 of the labor law (Laws 1909, c. 36; originally the Employer's Liability Act [Laws 1902, c. 600, § 3]), in force and applicable to the present case, changed the previous rule of law, (1) not merely by requiring the question whether the employé under such circumstances has assumed the risk to be left to the jury as matter of fact; but (2) by enacting (through implication) that mere continuance in employment with knowledge and appreciation of the danger does not compel the inference as matter of fact that the servant has assumed the risk. Consequently the finding of a jury to the effect that a servant has not assumed the risk merely because he has continued in the employ with knowledge and appreciation of the danger may not be set aside by the court as against the evidence, merely on the ground that these two elements were present.

(1) In the first place, it seems to me that it would nullify the effect of this piece of positive legislation (admittedly remedial) to hold that, as the question "whether the employé understood and assumed the risk of such injury shall be one of fact," it must, therefore, be submitted to the jury, and yet to maintain that, because the statute further provides that "a verdict rendered contrary to the evidence may in a proper case be set aside," the court may set aside a verdict in favor of plaintiff merely because there were present the two elements, knowledge of risk and continuance in employment, which had just been submitted to the jury for the very purpose of determining whether or not under such circumstances the employé assumed the risk. Such an interpretation of the statute amounts to saying that, when these two elements are present, the question whether the employé by reason thereof assumed the risk shall be left to the jury to be determined as matter of fact, although the court had already determined that the servant has thereby assumed the risk, and that, if the jury should find that he has not, the verdict should be set aside, on that account alone, as "against the evidence." In other words, the question of fact is left to the jury, although the court has already prejudged its determination to be necessarily against the plaintiff.

(2) But there is another decisive section in the statute which confirms this view. I refer to the last clause, which provides that an employé shall not be entitled under this statute to compensation in any case where he knew of the defect which caused the injury, and failed

to give notice thereof.  If nevertheless under this provision a verdict involving the jury's determination that an employé has not assumed the risk by continuing in the employment with knowledge of the danger may be set aside because continuance in the employment with knowledge necessarily implies assumption of risk as matter of fact, then the last quoted section would be worse than meaningless.  The law would then say, in substance, to the employé: "If you continue in your master's employ with knowledge of a defect and do not notify him thereof, you cannot recover, but, since if you continue in his employ with knowledge of the risk, you cannot recover anyhow, even if you do notify him you cannot recover either."  Or, to reduce it to its real absurdity, it would say: "If under circumstances in which you cannot recover you do not notify your master of the defect, you cannot recover."  Indeed, the argument hereinabove pursued might be urged with still greater force in view of the additional proviso in the last sentence of section 202, which absolves the servant from the necessity of giving notice if it appears on the trial that the defect was known to the employer prior to the accident.

This interpretation is confirmed by the line of English decisions beginning with Thomas v. Quatermaine, 18 Q. B. D. 685 (1887), distinguished and explained by Lord Esher in Yarmouth v. France, 19 Q. B. D. 647, 655, 656 (1887), and summed up in Smith v. Baker, App. Cas. 325, 356, 365 (1891).  These cases hold, in substance, that partly by reason of the provision in the English act (43–44 Vict. 1880, c. 42, § 2, subsec. 3), almost identical in terms with the last sentence of section 202, which I have just quoted, the theretofore existing substantive law had been changed, and that mere continuance in employment with knowledge of the risk can no longer be held as matter of law or matter of fact to involve necessarily the servant's assumption of the risk, and that a jury's determination that, notwithstanding the presence of those elements, the servant had not assumed the risk, could not be set aside, in the absence of other persuasive or rather determinative circumstances proving that he had assumed the risk.  They expressly say that the effect of the maxim, "Volenti non fit injuria," as applied to this class of cases, has been limited, in fact, destroyed, by the employer's liability act.  It may be noted, in passing, that the English law does not even contain the provision of our act declaring assumption of risk to be a question of fact.

As an illustration that the old rule of law enunciated in Priestly v. Fowler does not express the only and necessarily correct inference to be drawn from a servant's continuance in employment with knowledge of the danger, I cite the language of Lord President Robertson, who in Wallace v. Cutler Paper Mills Co., 19 R. 915 (Sc.) (1892), says, at page 918:

"If 'risk' means simply 'danger,' and 'accepting the risk' means 'encountering the danger,' then every workman who is sciens of a dangerous defect in machinery, and goes on working, accepts the risk in that sense, for he exposes his life and limbs to the danger of loss or injury.  But about such a workman there remains over the question whether he 'accepts the risk' in this other sense, that he agrees to relieve his master of the consequence of any injury caused by what ex hypothesi is the master's fault, and insures himself against the risk."

See, also, Osborne v. London & Northwestern Ry. Co., 21 Q. B. D. 220, 225 (1880) ; Smith v. Baker, App. Cas. 325, 336 (1891).

The most direct expression in the English cases on the point involved is to be found in the language of A. L. Smith, L. J., in Williams v. Birmingham Battery Co., 2 Q. B. D. 338, 344 (1899), who says:

"The sole question which was asked of the jury as to this was, had the deceased the same means of knowing that this was dangerous as the defendant had? A. Yes. Q. Did the deceased know it was dangerous? A. Yes. How does this prove that he either contracted or consented or undertook to accept the risk?"

My conclusion, therefore, is that expressed by Kruse, J., concurring in Milligan v. Clayville Knitting Co., 137 App. Div. 383, 121 N. Y. Supp. 763:

"The action is brought under the employer's liability act. Under the provisions of that act, although the risk was obvious, it is still a question of fact whether she assumed it. I think the employer's liability act has changed the rule of the common law in that regard, and that the change is not merely in procedure (namely, in requiring the assumption of the risk to be submitted to the jury as a question of fact), but that the substantive law itself has been changed."

See, also, Reynolds v. Seneca Falls Mfg. Co., 137 App. Div. 446, 122 N. Y. Supp. 797; Ovelsen v. Howes Transp. Co., 139 App. Div. 158, 123 N. Y. Supp. 649; Persons v. Bush Terminal Co., 68 Misc. Rep. 573, 125 N. Y. Supp. 277, 279.

In Graves v. Gustave Stickley Co., 125 App. Div. 132, 109 N. Y. Supp. 256, the same judge, writing for the court, says:

"The circumstances which were submitted to the jury from which they were permitted to determine whether or not the plaintiff assumed the risk were the fact that he knew the dangerous condition of the machinery (due to the master's negligence) and realized the risk arising therefrom, his intelligence, his age, the length of time during which he had remained in the defendant's employment, his wages, the instructions given to him, and the intention of the master and the servant as to the time during which he should remain in the master's employment. It appeared that the plaintiff was 45 years of age. He had worked at carpenter work and around machinery, including jointers (although not jointers precisely like the one in question). He was hurt the fourth day of his service. There is nothing to show that his wages were such as to suggest that he was taking an unusual risk. While he was shown how to operate the machine, nothing was said by himself or his employer that he should assume the risk. Having in mind the duty which the law imposed upon the defendant and the rule as to assumption of risks by the employé under the employer's liability act, I think the conclusion entirely warranted from the evidence that the plaintiff did not assume the risk."

I think, moreover, that the provision that the verdict of a jury on the question of assumption of risk may be set aside as contrary to the evidence "in a proper case" was merely a restatement of the rule applicable to all verdicts of a jury in civil cases, properly restated in this particular act, which expressly required what had previously been regarded as a question of law to be submitted to the jury as a question of fact. This in effect amounts to no more than the iteration of the necessary rule that a verdict of a jury which has been arrived at by passion, prejudice, or mistake may be set aside to avoid injustice.

That rule, however, should not be construed, in the face of the other language of the act and of its manifest intent, to mean that the jury's determination as matter of fact that a servant had not assumed the risk, although he was aware of the danger and continued in the employment, must be set aside by the court as contrary to the evidence, merely because previous to the act the court would have held as matter of law that the verdict was against the law.

I am aware that the decisions in Baker v. Empire Wire Co., 102 App. Div. 125, 92 N. Y. Supp. 355, Vaughn v. Glens Falls Cement Co., 105 App. Div. 136, 93 N. Y Supp. 979, Roche v. India Rubber Co., 115 App. Div. 582, 100 N. Y. Supp. 1009, Carey v. Manhattan Ry. Co., 116 App. Div. 247, 249, 101 N. Y. Supp. 631, and Kellogg v. N. Y. Edison Co., 120 App. Div. 410, 105 N. Y. Supp. 398, may readily be interpreted as sustaining views contrary to those hereinabove expressed. It may be, however, that in those cases the actual record disclosed circumstances in addition to the servant's mere continuance in employment after knowledge of the risk from which it should follow that as matter of fact he must be held to have assumed the risk. It certainly is apparent from a reading of the opinions in those cases that the points discussed by me were not raised at the bar, nor urged upon the attention of the court.

On the other hand, in the cases cited by me, namely, Milligan v. Clayville Knitting Co., Ovelsen v. Howes Transportation Co., Graves v. Gustave Stickley Co., and Persons v. Bush Terminal Co., supra, the court seems to have considered the very question whether mere continuance in employment with knowledge of the danger necessarily compels a finding of fact that the employé has assumed the risk; and the court reached the conclusion that the verdict of the jury in favor of the plaintiff cannot be set aside unless there are other and further elements present which the jury should not have disregarded. These cases constitute, so far as I can find, the latest decisions in point. The precise question has never reached our Court of Appeals; but in Rice v. Eureka Springs Co., 174 N. Y. 385, 397, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, Guilmartin v. Solvay Process Co., 189 N. Y. 490, 495, 496, 82 N. E. 725, and Clark v. N. Y. C. & H. R. R. Co., 191 N. Y. 416, 420, 84 N. E. 397, there are expressions which tend to confirm the view which I have taken.

In the case at bar, I find not only an absence of other circumstances leading to the conclusion that the jury should have found that the plaintiff assumed the risk as a matter of fact; but, on the contrary, it is shown without contradiction that there was an element present, namely, the master's assurance that the appliance was "all right" after he had repaired it, by which it has been held that a possible inference that the servant had assumed the risk may be regarded as expressly negatived. See Di Stefeno v. Peekskill Lighting & R. R. Co., 107 App. Div. 293, 296, 95 N. Y. Supp. 179.

Finally, when it is remembered that assumption of risk is an affirmative defense, the burden of proving which rests upon the defendant (Dowd v. N. Y. O. & W. Ry. Co., 170 N. Y. 459, 472, 63 N. E.

541; Jenks v. Thompson, 179 N. Y. 20, 25–26, 71 N. E. 266), I cannot find that the verdict of the jury was contrary to the evidence.

I think, therefore, that the order setting it aside should be reversed, with costs, and the verdict reinstated and judgment entered thereon in favor of the plaintiff.

PAGE, J. (concurring). I concur with Mr. Justice BIJUR that the Legislature intended to change the rule of the common law, and that assumption of risk is no longer to be predicated upon mere continuance of employment after knowledge of the defect. The question of whether the plaintiff assumed the risk is to be determined by the jury from the facts and circumstances of the case, and there must be something more shown affirmatively than that the plaintiff remained in the employment with knowledge of the defect. Nor do I think that the master's refusal to repair and the continuance of the plaintiff in the employment after such refusal is sufficient to prove that he assumed the risk. It is the duty of the master to furnish safe ways, works, and machinery. His neglect to do so renders him liable. I cannot agree that his refusal to do so relieves him of that duty. An examination of the record fails to disclose any fact other than the continuance in the employment after knowledge, and after the refusal of the master to remedy the defect.

SEABURY, J. (dissenting). The evidence in this case discloses facts which prior to the enactment of the labor law would, under controlling authorities, show an assumption of risk as a matter of law. The learned trial justice seems to have set the verdict of the jury aside upon this ground. The question of assumption of risk is, however, no longer a question of law, but is to be determined as a question of fact, "subject," as the statute declares, "to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence." Such being the provision of the statute, it seems to me that the court below had power to entertain a motion to set aside the verdict rendered in favor of the plaintiff on the ground that it was contrary to the evidence. If this court is satisfied from a review of the evidence that the verdict of the jury was contrary to the evidence, it is required to affirm the order appealed from, regardless of the ground upon which the order was made in the court below. Under section 202 of the employer's liability law (Laws 1909, c. 36; Laws 1902, c. 600, § 3), the employé no longer assumes the risk as a matter of law, but he may assume it as a matter of fact, and therefore the question should be submitted to the jury for determination. Where a verdict in such a case is contrary to the evidence, it may be set aside, as in any other case. Baker v. Empire Wire Company, 102 App. Div. 125, 129, 29 N. Y. Supp. 355; Vaughn v. Glens Falls Cement Company, 105 App. Div. 136, 139, 93 N. Y. Supp. 979; Kellogg v. N. Y. Edison Company, 120 App. Div. 410, 105 N. Y. Supp. 398; Galle v. Dunn, 127 N. Y. Supp. 1089; Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186.

These cases clearly show that, where the evidence establishes that an employé continues in the service of his employer after knowledge

of the danger, a verdict for the employé will be set aside as contrary to the evidence.  These authorities I regard as controlling upon us. Nor is the question clarified by declaring that continuing in employment with knowledge of the danger does not constitute assumption of risk as a matter of fact.  If it is to be held that the doctrine of assumption of risk under this statute does not exist, then the cases cited above have all been incorrectly decided, and the use of the expression "assumption of risk" in the statute is inexplicable.  I do not think that these cases can be satisfactorily disposed of by the assumption contained in the controlling opinion that:

"It may be  *  *  *  that in those cases the actual record disclosed circumstances in addition to the servant's mere continuance in employment after knowledge of the risk from which it would follow that as matter of fact he must have assumed the risk."

If it is not to be held that assumption of risk under this statute has been abolished, then the doctrine should be at least capable of definition.  If continuance in employment after knowledge of the danger does not constitute an assumption of the risk, then what else is necessary in order to prove that an employé assumed the risk?  It is a simple matter to dispose of the whole question by saying that it is to be "determined by the jury from the facts and circumstances of the case, and there must be something more shown affirmatively than that the plaintiff remained in the employment with knowledge of the defect." This, however, seems to me to avoid rather than answer the question. What "facts and circumstances" in addition to proof of continuance of employment with knowledge of the danger must be shown in order to constitute assumption of risk as a matter of fact?  If the courts adopt the view that an employé may assume the risk under this statute, but that the elements which constitute assumption of risk are incapable of statement or definition, they in effect hold that regardless of the evidence, the verdict of the jury upon this issue is final.  The adoption of this view renders meaningless that provision of the statute which provides that the verdict of the jury upon this issue shall be subject to the usual power of the court to set aside the verdict as contrary to the evidence.

The evidence in the case established without contradiction that the plaintiff continued in the employment of the defendant, with full knowledge of the danger incident to the work, and that the employer not only did not promise to repair the defect or remove the danger, but distinctly let him understand that he would not do so.

Under these circumstances, the verdict of the jury was contrary to the evidence, and was therefore properly set aside by the court below.