RAY JOHNSTON, Respondent, v. JAMES C. FARGO, as President of the AMERICAN EXPRESS COMPANY, Appellant.

MASTER AND SERVANT — AGREEMENT RELIEVING EMPLOYER FROM LIABILITY FOR NEGLIGENCE RESULTING IN PERSONAL INJURIES, VOID AS AGAINST PUBLIC POLICY. An agreement relieving an express company from liability to an employee for personal injuries resulting from the negligence of the company, which he may receive in the course of his employment, is void as against public policy, in that its enforcement would nullify the strict and just rule of the common law imposing the duty of care on the part of employers toward employees, which in the interests of the public should be maintained and enforced.

*Johnston* v. *Fargo*, 98 App. Div. 436, affirmed,

(Argued March 13, 1906; decided April 3, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 13, 1904, affirming a judgment of the Onondaga County Court which affirmed a judgment of the Municipal

Court of the city of Syracuse in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Willard A. Glen* for appellant. The contract signed by plaintiff releasing the defendant from negligence is a valid one, and the trial court erred in saying to the jury that said contract was void as being without consideration and against public policy. (*Matter of N. Y., L. & W. R. R. Co.,* 98 N. Y. 447; *Bissell* v. *N. Y. C. R. R. Co.,* 25 N. Y. 442; *Cowenhoven* v. *Ball,* 118 N. Y. 231; *Brady* v. *Nally,* 151 N. Y. 258; *Matter of Clark,* 168 N. Y. 427; *H. Ins. Co.* v. *Watson,* 59 N. Y. 390; *Baird* v. *Baird,* 145 N. Y. 659; *Griswold* v. *I. C. R. R. Co.,* 24 L. R. A. 651; *Richardson* v. *Mellish,* 2 Bing. 229; *Michigan Cen. R. R. Co.* v. *Hale,* 6 Mich. 243; *Graves* v. *L. S. & M. S. R. Co.,* 137 Mass. 33.)

*Frederick A. Kuntzsch* for respondent. The charge of the trial court holding void the release offered in evidence by the defendant was not error. (*Bissell* v. *N. Y. C. R. R. Co.,* 25 N. Y. 442; *Purdy* v. *R., W. & O. R. R. Co.,* 126 N. Y. 209; *Runt* v. *Herring,* 2 Misc. Rep. 105; *Simpson* v. *N. Y. R. Co.,* 80 Hun, 415; *Pratt* v. *L. S. R. R. Co.,* 63 Hun, 616; 136 N. Y. 654; *Perkins* v. *N. Y. C. & H. R. R. R. Co.,* 24 N. Y. 196; *Smith* v. *N. Y. C. & H. R. R. R. Co.,* 24 N. Y. 222; *Bossout* v. *R., W. & O. R. R. Co.,* 32 N. Y. S. R. 884; *Kenney* v. *N. Y. C. & H. R. R. R. Co.,* 125 N. Y. 422; *Will* v. *P. T. Co.,* 3 App. Div. 22.)

GRAY, J. The plaintiff, while in the employment of the American Express Company, the defendant, sustained personal injuries, for which he has recovered this judgment in the Municipal Court of the city of Syracuse; which has been affirmed by the County Court of Onondaga county and by the Appellate Division of the Supreme Court, in the fourth department. The latter court was divided in opinion and has permitted the defendant to further appeal to this court, upon

the ground that there was a question of law in the case, which ought to be reviewed by us. The injuries were occasioned by the plaintiff's falling with an elevator, or lift, in the barn of the express company, while it was being used for carrying down some vehicles, and the complaint charges that it was in a defective condition and that the occurrence was due to the fault, or negligence, of the defendant. The evidence upon the trial was such as to raise questions of fact, as to the negligence of the defendant and as to the contributory negligence of the plaintiff, and those questions were properly submitted by the trial court for the determination of the jury. They demand no further consideration by us. The one question for discussion upon this appeal is the sufficiency of the defense made by the company upon an agreement, which the plaintiff, upon entering the defendant's employment, executed and delivered to it. It was in these words :

" I do further agree, in consideration of my employment by said American Express Company, that I will assume all risks of accident or injury which I shall meet with or sustain in the course of such employment, whether occasioned by the negligence of said company, or any of its members, officers, agents or employees, or otherwise; and that, in case I shall at any time suffer any such injury, I will at once execute and deliver to said company a good and sufficient release, under my hand and seal, of all claims, demands and causes of action arising out of such injury or connected therewith, or resulting therefrom; and I hereby bind myself, my heirs, executors and administrators with the payment to said express company, on demand, of any sum which it may be compelled to pay in consequence of any such claim, or in defending the same, including all counsel fees and expenses of litigation connected therewith."

In submitting the case to the jury, the trial judge charged as follows, with respect to this defense : " There is a clause in the contract which provides that the plaintiff shall release the defendant from any injuries which he might suffer by reason of the negligence of the defendant. I shall hold as matter of law that that clause in that contract is void as being without

consideration and as against public policy." At the Appellate
Division the judgment was upheld, on this point, upon the
ground that the agreement was contrary to public policy and,
therefore, invalid, and Mr. Justice HISCOCK, who delivered
the opinion of the court, has presented the reasoning in sup-
port of that view very fully and ably.

The question is one upon which this court has not pro-
nounced itself and it is of considerable importance; touching
as it does the principle of freedom of contract. In the case
of *Purdy* v. *R., W. & O. R. R. Co.*, (125 N. Y. 209), such a
contract to release the employer from liability for injury
through negligence was involved; but it was held to have
been void for being without the support of any consideration.
It was said that no intimation was intended that it would have
been valid, if there had been a consideration for it, and that
" it might even then be urged that public policy forbids the
exaction of such a contract from its employés by railroad and
and other corporations and upon that question we desire to
express no opinion at the present time." In *Kenney* v. *N. Y.
C. & H. R. R. R. Co.*, (125 N. Y. 422), the contract for
exemption from liability was between the defendant and the
plaintiff's employer, an express company, under which the
former sought to defeat the plaintiff's action. This question
was not passed upon; nor was it in the case of *Dowd* v. *N.
Y., Ont. & W. Ry. Co.*, (170 N. Y. 459), which involved the
proposition of the implied assumption by the employé of the
risks incident to the employment.

The question of the validity of such a contract between an
employer and a person in his employment, as affected by rea-
sons of public policy, it must be conceded, is a debatable one.
In support of the right to make the agreement we have
respectable authority in decisions of the courts of England
and of the state of Georgia. (*Griffiths* v. *Earl of Dudley*, L. R.
[9 Q. B. Div.] 357; *Western, etc., R. R. Co.* v. *Bishop*, 50 Ga.
465; *Same Co.* v. *Strong*, 52 Ga. 461.) The great weight of
authority in decisions of the courts of the various states, how-
ever, sustains the view that such an agreement is contrary to

public policy. (*L. S. & M. S. Ry. Co.* v. *Spangler*, 44 Ohio
St. 471; *K. P. R. Co.* v. *Peavey*, 29 Kan. 169; *M. & C. R.
R. Co.* v. *Jones*, 2 Head [Tenn.], 517; *Willis* v. *G. T. R. Co.*,
62 Me. 488; *L. R. & F. S. Ry. Co.* v. *Eubanks*, 48 Ark. 466;
*R. & D. R. R. Co.* v. *Jones*, 92 Ala. 218; *Maney* v. *C., B. &
Q. R. R. Co.*, 49 Ill. App. 105; *M. N., etc., Co.* v. *Eifert*, 15
Ky. L. R. 575; *Blanton* v. *Dold*, 109 Mo. 64; *Johnson* v.
*R. & D. R. R. Co.*, 86 Va. 975.) In the Supreme Court
of this state, we find, in addition to what has been held below
in this case, a similar view taken by the General Term of the
second department in *Simpson* v. *N. Y. Rubber Co.*, (80 Hun,
415). The preponderance of authority adverse to the validity
of such contracts is such as greatly and properly influences our
view of the question. In *Griffiths* v. *Earl of Dudley*, (*supra*),
where such an agreement was held to be quite consistent with
public policy, the view of the English court, as expressed by
Justice FIELD, was that " the interest of the employed only
would be affected " and not that of " all society," and " that
workmen, as a rule, were perfectly competent to make reason-
able bargains for themselves." It is to be observed, how-
ever, with respect to the situation in England, that subse-
quently, in 1897, an act of Parliament was passed, entitled
" The Workingmen's Compensation Act," which, in effect,
declares the public policy of the state. By that act, in reality,
though not in form, the right of the workingman to contract
away his right to recover compensation from his employer is
nullified; inasmuch as such a contract is only valid when, as
between employer and employed, there exists a general scheme
for compensation, which secures to the workingman benefits
as great as those he would derive from a proceeding under
the Compensation Acts.

The attitude of this court, with respect to the freedom to
contract for immunity from the consequences of negligence,
has been, from an early day, very firm, where the contracts
of common carriers are concerned; as may be seen by refer-
ence to *Kenney* v. *N. Y. C. & H. R. R. R. Co.*, (*supra*),
where the cases establishing the rule were reviewed; but to
extend the application of the doctrine in such cases to the

relations of the employer and the employed involves considerations so closely touching the general welfare of the community, that the state must be, necessarily, deeply concerned. This court has not been in agreement with the Supreme Court of the United States upon the right of common carriers to contract against their negligence; but, recently, in *Baltimore & Ohio So. Ry. Co.* v. *Voigt,* (176 U. S. 498), the doctrine of *New York Central R. R. Co.* v. *Lockwood,* (17 Wall. 357), seems to have been somewhat departed from. As that decision touches, in a degree, upon the question we are considering, I shall, briefly, refer to it. In that case Voight was an express messenger and was injured, as the consequence of a collision upon the railroad. The company showed, in defense of a claim for compensation, a contract made between it and the express company, relating to the latter's business, which agreed to protect it from liability to messengers by reason of accidents occurring through negligence, and a further contract between Voight and the express company, by which he assumed the risk of all accidents from negligence, sustained by him in the course of his employment, and agreed to hold his employer harmless from any claim for personal injuries. It was held that the contract did not contravene public policy. Though the distinction was made that Voight was not a passenger, within the meaning of the *Lockwood Case,* (*supra*), and that his contract exonerated the railroad company from liability to him, it might, perhaps, be said that the decision affords some support, in doctrine, to the appellant's argument.

Contracts are illegal at common law, as being against public policy, when they are such as to injuriously affect, or subvert, the public interests. (1 Story Eq. Juris. § 260n; *Chesterfield* v. *Janssen,* 2 Vesey Sr. 125, 156.) If it were true that the interest of the employed, only, would be affected by such contracts as the present one, as it was held by the English court, in *Griffiths* v. *Earl of Dudley,* (*supra*), it would be difficult to defend, upon sound reasoning, the denial of the right to enter into them; but that is not quite true. The theory of their invalidity is in the importance to the state

that there shall be no relaxation of the rule of law, which imposes the duty of care on the part of the employer towards the employed. The state is interested in the conservation of the lives and of the healthful vigor of its citizens, and if employers could contract away their responsibility at common law, it would tend to encourage on their part laxity of conduct in, if not an indifference to, the maintenance of proper and reasonable safeguards to human life and limb. The rule of responsibility at common law is as just as it is strict and the interest of the state in its maintenance must be assumed; for its policy has, in recent years, been evidenced in the progressive enactment of many laws, which regulate the employment of children and the hours of work, and impose strict conditions with reference to the safety and healthfulness of the surroundings of the employed, in the factory and in the shop. The employer and the employed, in theory, deal upon equal terms; but, practically, that is not always the case. The artisan, or workman, may be driven by need; or he may be ignorant, or of improvident character. It is, therefore, for the interest of the community that there should be no encouragement for any relaxation on the employer's part in his duty of reasonable care for the safety of his employés. That freedom of contract may be said to be affected by the denial of the right to make such agreements, is met by the answer that the restriction is but a salutary one, which organized society exacts for the surer protection of its members. While it is true that the individual may be the one, who, directly, is interested in the making of such a contract, indirectly, the state, being concerned for the welfare of all its members, is interested in the maintenance of the rule of liability and in its enforcement by the courts.

To a certain extent, the internal activities of organized society are subject to the restraining action of the state. This is evidenced by the many laws upon the statute book, in recent years, which have been passed for the purpose of prohibiting, restricting, or regulating, the conduct of a private business; either because regarded as hurtful to the health, or

welfare of the community ; or because deemed from its nature, or magnitude, affected with a public interest. It has been observed that it is still the business of the state, in modern times, to defend individuals against one another and, though the proposition is a broad one, when considered with reference to penal legislation and all legislation intended for the promotion of the health, welfare and safety of the community, it is not without truth. It is evident, from the course of legislation framed for the purpose of affording greater protection to the class of the employed, that the people of this state have compelled the employer to do many things which at common law he was not under obligation to do. Such legislation may be regarded as supplementing the common-law rule of the employer's responsibility and is illustrative of the policy of the state. Therefore it is, when an agreement is sought to be enforced, which suspends the operation of the common-law rule of liability and defeats the spirit of existing laws of the state, because tending to destroy the motive of the employer to be vigilant in the performance of his duty towards his employés, that it is the duty of the court to declare it to be invalid and to refuse its enforcement.

I think that the judgment below was correct and should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.