DOMENICO  COLAIZZI, ' Appellant,  *v.*  PENNSYLVANIA
RAILROAD  COMPANY, Respondent.

Negligence — master and servant — release by employee injured
in accident — effect of acceptance of benefits from relief fund
established by railroad company — when contract of settlement
and acceptance of benefits by employee, after accident, not against
public policy or forbidden by Railroad Law or Insurance Law.

1. When an agreement is sought to be enforced which suspends
the operation of the common-law rule of liability and defeats the
spirit of existing laws of the state, because tending to destroy the
motive of the employer to be vigilant in the performance of his
duty towards his employees, it is the duty of the court to declare it
to be invalid and to refuse its enforcement.

2. But a contract or settlement and release of a railroad com-
pany after an accident, from an alleged cause of action arising
from its negligence, which is clear in its terms, and when its pur-
pose and intent are understood by the person with whom it is made
and which is founded upon a reasonable and valid consideration, is
binding upon the parties thereto.

3. Defendant administers a so-called relief fund for the benefit of
its employees who are injured or disabled which also provides for
payment of certain fixed sums in case of their death from accident
or other cause. The relief fund is formed by voluntary contribu-
tions from employees, appropriations when necessary to make up
any deficit by the company, income or profit from investments of
the moneys or fund, and such gifts or legacies as may be made to
the company for the use of the fund. An employee in making
application for membership is required to sign an agreement,
" That the acceptance of benefits from the said relief fund for
injury or death shall operate as a release of all claims for damages
against said company, arising from such injury or death." Plain-
tiff was injured while in the defendant's employ and while a mem-
ber of the relief department. After receiving several payments
from that fund he discontinued acceptance of such payments
and brought this action. *Held*, that plaintiff's contract was neither
against public policy nor forbidden by chapter 657 of the Laws of
1906 (Railroad Law, § 64; Cons. Laws, ch. 49) which provides that
" No contract, receipt, rule or regulation, between an employee and
a railroad corporation or receiver, shall exempt or limit the liability
of such corporation or receiver from the provisions of this section; "

nor is it void under section 201 of the Insurance Law, hence plaintiff is bound by his acceptance, after injury, of the benefits provided by the relief fund, thereby relieving the defendant from further liability.

*Colaizzi* v. *Pennsylvania R. R. Co.*, 143 App. Div. 638, affirmed.

(Argued March 5, 1913; decided April 29, 1913.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 26, 1911, which reversed an order of the court at a Trial Term setting aside a verdict in favor of defendant and granting a new trial, and directed judgment for defendant.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Horace O. Lanza* and *Frank A. Miceli* for appellant. The plaintiff signed the application to the Relief Fund Association and accepted the benefits after his injury in ignorance of the fact that it would release any claim of damages for negligence on the part of the defendant, all of which was through the fraud, deceit and misrepresentations of the defendant and the "Relief Fund Association" and, therefore, not binding upon the plaintiff. (*Downing* v. *St. Columba Society*, 10 Daly, 262; *Stephens* v. *Vroman*, 16 N. Y. 381; *Palmer* v. *Manning*, 4 Den. 131; *Kirschner* v. *N. H. S. M. Co.*, 135 N. Y. 182; *Wells* v. *Yates*, 44 N. Y. 525; *Wilcox* v. *A. Tel. Co.*, 176 N. Y. 115.) The release set up by the defendant was null and void and the learned Appellate Division should not have disturbed the order of the trial court granting a new trial. (*Chicago, B. & Q. R. Co.* v. *Haley*, 111 N. W. Rep. 598; *Bardon* v. *Atlantic Coast Line*, 63 S. E. Rep. 971; *Johnson* v. *Fargo*, 184 N. Y. 443; *Knorr* v. *Bates*, 14 Misc. Rep. 501; *P. B. & W. R. Co.* v. *Schubert*, 36 App. D. C. 565; *Washington* v. *A. C. R. R. Co.*, 71 S. E. Rep. 1066; *Chicago, B. & Q. R.* v. *McGuire*, 219 U. S. 548; *Baltimore & O. R. Co.* v. *Gawinski*, 197

Fed. Rep. 31; *Pittsburg* v. *Montgomery*, 152 Ind. 1; *Simpson* v. *N. Y. Rubber Co.*, 80 Hun, 415.)

*H. J. Adams* and *Frank Rumsey* for respondent. The relief fund contract entered into by the plaintiff is not void as against public policy. (*Ringle* v. *Penn. R. R. Co.*, 164 Penn. St. 529; *Graft* v. *B. & O. R. R. Co.*, 8 Atl. Rep. 206; *Fuller* v. *B. & O. R. R. Co.*, 67 Md. 433; *Smith* v. *B. & O. R. R. Co.*, 81 Md. 412; *Leas* v. *Penn. Co.*, 37 N. E. Rep. 423; *Moore* v. *P., C., C. & St. L. R. R. Co.*, 152 Ind. 345; *Hosea* v. *P., C., C. & St. L. R. R. Co.*, 53 N. E. Rep. 419; *Ray* v. *B. & O. R. R. Co.*, 73 N. E. Rep. 942; *Bell* v. *C., B. & Q. R. R. Co.*, 62 N. W. Rep. 314; *Curtis* v. *C., B. & Q. R. R. Co.*, 71 N. W. Rep. 42; *Walters* v. *C., B. & Q. R. R. Co.*, 104 N. W. Rep. 1066; *Clinton* v. *C., B. & Q. R. R. Co.*, 84 N. W. Rep. 90; *Eckman* v. *C., B. & Q. R. R. Co.*, 64 Ill. App. 444.) The relief fund contract is not rendered void by chapter 657 of the Laws of 1906. (*Pittsburgh, C., C. & St. L. R. R. Co.* v. *Moore*, 152 Ind. 345; *Pittsburgh, C., C. & St. L. R. R. Co.* v. *Hosea*, 53 N. E. Rep. 419; *Hamilton* v. *St. K., N. & W. R. R. Co.*, 118 Fed. Rep. 92; *Cox* v. *Company*, 45 N. E. Rep. 641.) The insurance laws of the state of New York do not affect any question involved in this appeal. (*Parmelee* v. *Haas*, 171 N. Y. 579; *Bean* v. *Flint*, 204 N. Y. 153; *Mahar* v. *Harrington Park Villa Sites*, 204 N. Y. 231; *Rosenstein* v. *Company*, 50 Misc. Rep. 345; *Sheets* v. *P., C., C. & St. L. Ry. Co.*, 67 N. E. Rep. 93; *Beck* v. *Pa. R. R. Co.*, 43 Atl. Rep. 908; *Maine* v. *C., B. & Q. R. R. Co.*, 70 N. W. Rep. 630; *Hunt* v. *Northern Central R. R. Co.*, 124 App. Div. 43; *Fretts* v. *Palmer*, 132 U. S. 282; *Marshall* v. *Insurance Co.*, 78 Hun, 83; 149 N. Y. 617; *Sinnott* v. *Company*, 164 N. Y. 386; *Gas Light Co.* v. *Claffy*, 151 N. Y. 24; *State of Kansas* v. *American Book Co.*, 69 Kan. 1; *Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 U. S. 99.)

CHASE, J.   The plaintiff while engaged as an employee of the defendant and on June 13, 1908, at East Aurora, N. Y., was run over by a caboose attached to one of its work trains.   Plaintiff served a notice upon the defendant pursuant to the provisions of section 2 of chapter 600, Laws of 1902 (now section 201 of the Labor Law).   This action is brought and has been maintained by the plaintiff under such state statute to recover for his personal injuries.   In the complaint the plaintiff alleges and in the answer the defendant denies that plaintiff's injuries were caused by the defendant's negligence and without negligence by the plaintiff contributing thereto.   The defendant also alleges that the plaintiff was a member of its relief department and that after said injuries he elected to accept certain benefits from the relief fund of said department, and that pursuant to the terms of the plaintiff's membership in said department the acceptance of said benefits released the defendant from all liability or obligation, if any, on account of the injuries so received by him.   The plaintiff asserts that he signed the application for membership in the relief department and accepted the benefits after his injury in ignorance of the fact that it would release any claim by him for damages for negligence on the part of the defendant and that he signed such application and accepted said benefits through the fraud, deceit and misrepresentations of the defendant and the said relief department.

It is conceded that the plaintiff signed an application for membership in the relief department on January 18, 1907, and that after his injuries he accepted and receipted for the benefits provided by said department pursuant to the provisions of its by-laws and regulations.   At the trial all of the issues were submitted to the jury.   Although the issues were all submitted to the jury, the court told the jury, in substance, that if it found that the plaintiff became a member of the relief department, having signed the application with knowledge of its con-

tents, and if he accepted the money from the relief fund with a conscious understanding of his relation to the defendant company, it was a bargain that he was authorized to make and by it waived any claim against the defendant for damages for his injuries resulting from negligence.

The court also charged that if the jury found against the plaintiff upon the questions relating to his membership in the relief department and his acceptance of the money from the relief fund it would not be necessary for it to consider the other questions in the case relating to negligence by the defendant and contributory negligence by the plaintiff. The determination of this appeal depends wholly upon the correctness of the charge of the court relating to the relief fund. In considering such questions it must be assumed that the plaintiff signed the application to. the relief department and accepted the benefits from the relief fund after his injury without fraud, deceit or misrepresentation. The plaintiff insists: 1. That the contract is void as against public policy. 2. That it is contrary to chapter 657 of the Laws of 1906 (now section 64 of the Railroad Law; Cons. Laws, ch. 49), which provides that "No contract, receipt, rule or regulation, between an employee and a railroad corporation or receiver, shall exempt or limit the liability of such corporation or receiver from the provisions of this section." (Prescribing liability for negligence.) 3. That the contract is void under the Insurance Law.

In 1886 the defendant and several other railroad corporations each of which had adopted a plan for the benefit of its service and employees similar to that adopted by the defendant, associated themselves in the joint administration of their several relief departments in the name of " The Pennsylvania Railroad Voluntary Relief Department." The defendant's regulations therein mentioned provide that the object of the department is the establishment and management of a fund to be known as " The

Relief Fund" for the payment of definite amounts to employees contributing to the fund who, under the regulations, shall be entitled thereto when they are disabled by accident or sickness and in the event of their death to the relatives or other beneficiaries specified in the applications of such employees. The relief fund is formed by voluntary contributions from employees; appropriations when necessary to make up any deficit by the company; income or profit derived from investments of the moneys or fund, and such gifts or legacies as may be made to the company for the use of the fund.

The defendant agreed to take general charge of the department, guarantee the fulfillment of the obligations assumed by it in conformity with the regulations, take charge of the funds and be responsible for their safe-keeping, supply the necessary facilities for conducting the business of the department and pay all the operating expense thereof. It has paid the operating expenses and also large sums annually to enable the department to fulfill its obligations.

Membership in the relief fund is voluntary and confined to employees not over forty-five years of age at the time of making application for membership, who pass a satisfactory physical examination. A member may withdraw from such relief department at any time.

Members of the relief fund are divided into five classes. Members of the first class are required to make payments into said fund of seventy-five cents per month, and members of the other classes are required to make payments into said fund of an amount equal to seventy-five cents per month multiplied by the number of their class.

Payments are made while disabled by sickness or by injury other than accident in the company's service, for each day after the first three days of such disability, and for a period not longer than fifty-two weeks, at the rate of forty cents per day for a member of the first class, and

of greater amounts for the other classes in proportion to their contributions for such classes, and after fifty-two weeks at half the foregoing rates.

Payments are made to members while disabled by accident in the company's service for each day during a period not longer than fifty-two weeks at the rate of fifty cents per day for a member of the first class, and of greater amounts for members of the other classes in proportion to their contributions, and at half these rates after fifty-two weeks and during the continuance of the disability.

Payments are made on the death of a member from accident or other cause occurring during the time for which he shall have contributed or while receiving the disablement benefits, or during a month in which he shall have recovered from disability, of two hundred and fifty dollars for a member of the first class, and of greater amounts for the other classes in proportion to their contributions.

There are numerous agreements relating to the funds and their distribution, and to members and their rights and duties, which are of value to the members, but which it is not necessary now to state in detail.

An employee in making application for membership is required to sign an agreement which includes the following: "That the acceptance of benefits from the said relief fund for injury or death shall operate as a release of all claims for damages against said Company, arising from such injury or death, which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance."

It is also provided by a section of the by-laws or regulations of the department as follows: "Should a member or his legal representatives make claim, or bring suit, against the Company, or against any other corporation which may be at the time associated therewith in admin-

istration of the Relief Departments, in accordance with the terms set forth in Regulation No. 6, for damages on account of injury or death of such member, payment of benefits from the Relief Fund on account of the same, shall not be made, until such claim shall be withdrawn or suit discontinued. Any compromise of such claim or suit, or judgment in such suit, shall preclude any claim upon the Relief Fund for benefits on account of such injury or death, and the acceptance of benefits from the Relief Fund by a member or his beneficiary or beneficiaries, on account of injury or death, shall operate as a release and satisfaction of all claims against the Company and any and all of the corporations associated therewith in the administration of their Relief Departments, for damages arising from such injury or death."

We repeat what was said in behalf of this court by Judge GRAY in *Johnston* v. *Fargo* (184 N. Y. 379, 386) as follows: " When an agreement is sought to be enforced, which suspends the operation of the common law rule of liability and defeats the spirit of existing laws of the state, because tending to destroy the motive of the employer to be vigilant in the performance of his duty towards his employees, that it is the duty of the court to declare it to be invalid and to refuse its enforcement."

We also concur in what was said by Chief Judge CULLEN when writing as a member of the General Term of the second department in *Simpson* v. *N. Y. Rubber Co.* (80 Hun, 415, 417), and referring to a statute requiring, among other things, that cogs and gearing should be properly guarded, he used the following language: " Experience has shown that in some matters persons must be protected from their own imprudence. If there were to be considered only the interest of the individual in his personal security the statute would be unnecessary. The end sought to be accomplished could equally well be secured by contract between the employer and the employee * * * but the state has great interest in the protection of its

members, and this even of the most utilitarian character. In the case of a maimed employee, he and his family are likely to become a public charge; and the same is true of the family of an employee killed."

The agreement entered into by the plaintiff as a member of the defendant's relief department is not at all of the character of the agreement considered in the *Johnston* case.

An employee's agreement, upon becoming a member of the relief department, wholly. independent of the part thereof providing that in case of accident while engaged in the company's service entitling him to indemnity as therein provided at his option in substitution for and in release of his right, if any, to compensation for his injuries to be enforced as a common-law liability, is substantial, and wholly for the benefit of the employee.

The agreement provides unqualifiedly for indemnity to an employee for sickness and for injuries other than by accident while engaged in the company's service and also for injuries by an accident while engaged in the company's service when there is no common-law liability on the part of the defendant therefor. It is apparent that membership in the relief department was not a condition of the plaintiff's employment. He had been engaged as a laborer by the defendant for several years before he made application for membership in the relief department. He first became a member of the relief department a little more than a year prior to the accident. He was not required to determine whether he would accept indemnity or insist upon his common-law rights immediately after the accident occurred. The first payment of indemnity was made to him forty-eight days after the accident occurred, and after he had been discharged from the hospital. He received a payment on account of indemnity at that time and five times subsequently, the last time being about six months after the accident occurred. After receiving such payments six times he discon-

tinued accepting payments on account of indemnity and brought this action.

It is true that the release of the defendant from its common-law liability as now claimed by it was in pursuance of the terms of the contract made with the plaintiff when he became a member of the department, but the acceptance or rejection of the benefits arising from the accident mentioned was an act entirely independent of the membership and wholly voluntary on the part of the plaintiff. The signing of the application and the acceptance of the certificate was not a release. It was the acceptance of benefits and the exercise of his option that resulted in the release. The contract created additional benefits bounded by its terms. It did not itself include a release of any common-law liability. The distinction between the *Johnston* case and this case is fundamental. In the one case the signing of an agreement as a condition of employment was absolute. It was made when the prospective employee might in many cases fail to appreciate its purport or results — and such an agreement would, as said by this court, tend to destroy the motive of the employer to be vigilant in the performance of his duty towards his employees.

In the latter case the option that will result in the employer's release is not to be exercised until the liability arising from a particular accident, if any, has become fixed and at a time when the effect of the decision can be appreciated, the same as when a settlement of such a claim is made by a single cash payment or in any other way.

It may be assumed that the exercise of the option should not be enforced unless it is made freely and with an appreciation of its consequences and effect. It cannot be successfully maintained that a contract or settlement and release of a railroad company after an accident from an alleged cause of action arising from its negligence, which is clear in its terms, and when its purpose and intent are

understood by the person with whom it is made and which is founded upon a reasonable and valid consideration is not binding upon the parties thereto. Such, in our judgment, is the nature of the agreement between the plaintiff and the defendant which resulted in his accepting the benefits provided by the relief fund and in releasing the defendant from further liability.

The statute in this state referred to is intended to prevent an agreement of the character of the one considered in the *Johnston* case, and it is not intended to cover a case like the one now before us. It refers to a contract releasing an employer from an act of negligence that may happen during a future employment and has no relation to contracts, agreements or options executed or accepted in good faith after a liability, if any, has accrued. We see no reason for asserting that such an agreement so long as it is freely made and fully understood is against public policy or the statutes of this state.

We have not attempted in this opinion to refer to the many decisions in the Federal and State courts relating to agreements by which members of the relief department of a railroad corporation who are given a prescribed indemnity from a relief fund in case of an injury occurring while in the service of the railroad corporation and also in case of sickness or an injury occurring when not engaged in the service of such railroad corporation, are required, in cases where the injury occurs while in the service of a railroad corporation, to elect whether they will accept such indemnity or assert their right to damages by reason of the common-law liability of such railroad corporation. The decided weight of such authority is in favor of the conclusion which we have reached in this case.

The plaintiff in his brief in this court among other things contends that the agreement made by him as a member of the relief department cannot be enforced by reason of provisions of the Federal statutes relating to

employers' liability. We have not in this opinion discussed the Federal statutes or the decisions of the Federal courts relating to the same.

The plaintiff has been engaged in the service of the defendant for several years as a laborer. His employment was wholly within this state, and it was not in any way directly connected with interstate transportation. The caboose that ran over him was attached to a work train which was also in use in this state. The action is brought under a statute of this state and it has been tried and the plaintiff has heretofore sought to sustain his claim wholly by reason of such state statute. Our decision is rendered without intending to construe the Federal statutes. The plaintiff also claims that the defendant's relief department is maintained in violation of the provisions of the insurance law of this state. (Section 201 of the Insurance Law, Cons. Laws, ch. 28.)

The defendant's relief department is administered with a similar department in each of several other railroad corporations as hereinbefore stated, and the department employees or officers are chosen from its members and the officers of said railroad corporations as provided by the by-laws and regulations of such department. It does not appear whether the department is in itself a corporation. Defendant's relation to the department has been sufficiently stated. The department is maintained for the benefit of the defendant's service and for its employees who come within the terms of its by-laws and who voluntarily become members of the department and entitled to its benefits.

The indemnity or benefits to be paid by the department are derived only in part from contributions from its members. Such contributions are defined to be "such portion of the wages or benefits or cash payments in lieu thereof as a member shall have agreed in his application shall be applied for the purpose of securing to him the right to benefits from the relief fund."

Experience has shown that such contributions have been materially inadequate to pay the benefits provided by the agreements with the department members although facilities for conducting the business of the department and the operating expenses of the business are paid by the defendant. The material and substantial value of the agreement with the members is found in the provision of the regulations assented to by the defendant which is therein referred to as "The Company" and is as follows: "The Company will take general charge of the department; guarantee the fulfillment of th⁻ obligations assumed by it in conformity with the regulations from time to time established; take charge of the funds and be responsible for their safe keeping; supply the necessary facilities for conducting the business of the department and pay all the operating expenses thereof."

The defendant is not, therefore, within the language of section 201 of the Insurance Law, "engaged in the business of life insurance upon the co-operative or assessment plan" or "in the business of casualty insurance upon the co-operative or assessment plan."

The defendant's relief department has been in existence more than twenty-five years and if the legislature had intended to include a corporation maintaining such a department within section 201 of the Insurance Law it would have used language therein clearly showing such intention.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, COLLIN and HOGAN, JJ., concur.

Judgment affirmed.