Alice FRIEDMAN, as Administratrix, etc., Plaintiff,

v.

LOCKHEED AIRCRAFT CORPORATION, Defendant.

Alice FRIEDMAN, as Administratrix, etc., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 12611, 12612.

United States District Court
E. D. New York.

Feb. 10, 1956.

William A. Hyman, and Harold W. Hayman, New York City, for plaintiff.

Mendes & Mount, New York City, for defendant Lockheed Aircraft Corp., George W. Clark, New York City, of counsel.

Leonard P. Moore, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., Joseph Soviero, Asst. U. S. Atty., Brooklyn, N. Y., for United States.

RAYFIEL, District Judge.

The above-entitled actions were brought to recover damages for the wrongful death of the plaintiff's intestate. The suit against the United States of America was commenced under the Federal Tort Claims Act, Title 28 U.S. Code, § 2674, and under section 1346(b) of said title. The complaint herein alleges that the decedent, a member of the Aviation Writers Association, had been invited to ride as a guest on a demonstration flight of a plane known as a Lockheed F–94–B jet all weather interceptor, owned and controlled by the defendant, and operated during the course of his office and employment by one Lt. Col. Robert D. Curtiss, an officer of the United States Air Force; that due to the carelessness and negligence of the defendant, its agents, servants and employees, in the operation and maintenance of the plane, and in its failure to keep it in a proper and airworthy condition, certain parts of the plane broke, causing it to plunge into the waters of Long Island Sound, as a result of which the decedent sustained the injuries from which he died on June 15, 1951.

The complaint in the action against Lockheed Aircraft Corporation alleges, inter alia, that the defendant manufactured the aforementioned plane and sold it to the United States Air Force. After repeating, in substance, the allegations contained in the aforementioned complaint respecting the invitation to the decedent, the flight, the crash and his resultant death, the complaint avers that the said plane was an inherently dangerous instrumentality, due to the fact that the ejection mechanism of the seat occupied by the decedent was defective, in that it failed to eject him; and that the defendant Lockheed was careless and negligent in the manufacture, testing and inspection of the plane, by reason whereof the decedent sustained fatal injuries.

The Government denied the allegations of negligence and, as an affirmative defense, pleaded that the decedent, in consideration of the invitation to participate in the flight, executed and delivered to it an instrument under the terms of which he released the defendant from all claims on account of death or injury resulting from said flight. The defendant Lockheed likewise denied the allegations of negligence and pleaded, as an affirmative defense, that the decedent by executing the aforementioned "release", assumed all the risks incident to the flight, and absolved Lockheed from any and all liability.

On July 27, 1955, an order was entered herein directing that the above-entitled actions be tried jointly.

Thereafter the Government moved under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary

judgment in its favor, basing its right thereto on the aforementioned purported release. On November 7, 1955, Chief Judge Inch made an order denying the motion, and directing that a separate prior trial be held of the issues relating to the separate defense of "release" raised by the Government. On December 27, 1955, pursuant to the oral application of the attorneys for Lockheed, made under Rule 42 of the Federal Rules of Civil Procedure, Judge Galston made an order directing that there be a joint trial solely of the issues raised by the defense of "release" in the answers in both actions.

The trial was held on January 4, 1956. No oral evidence was presented. The Government introduced in evidence two documents. One (Exhibit No. 1) is the aforementioned purported release. It reads as follows:

"Release
"Mitchel AFB, New York
"June 15th 51
"(Date)

"Know All Men By These Presents:
"Whereas, I William S. Friedman, am
(Full Name)
about to take a flight or flights as a passenger in a certain air force aircraft on June 15, 1951: and whereas I am do-
(Date or Dates)
ing so entirely upon my own initiative, risk, and responsibility; now, therefore, in consideration of the permission extended to me through its' officers and agents by the United States to take such flight or flights, I do hereby, for myself, my heirs and executors and administrators, remise, release and forever discharge the Government of the United States and all of its' officers, agents and employees, acting officially or otherwise, for any and all claims, demands, actions, or causes of action, on account of my death or on [any] [account] of any any that may occur from any cause during said flight or flights or continuances

thereof, as well as all ground and flight operations incident thereto.
"William S. Friedman
(Signature)

"Hugh A. Day, Major
(Witness)

"Geo. L.
(Witness)

"Alice Friedman
(wife)
(Name of person to be notified in emergency)

"34–15    –12th St.
Long Island
City 6
(Address of same)'

(Brackets around words "any" and "account" and underscoring of phrase 'of any any' added.)

The other (Exh. No. 2) is a document called Army Regulation No. 95–20, Air Force Regulation No. 76–6, which became effective on August 23, 1949. The pertinent parts of the regulation are sections 8, 8(a) and 11, which read as follows:

"8. Delegation of authority.—The transportation of individuals in the categories indicated in a and b below is determined to be on matters of concern to the armed forces, and the following commanders are authorized to permit these individuals to travel in military aircraft on a non-reimbursable basis:

*       *       *       *       *

"a. Accredited representatives of informational media (i. e., press, radio, news, etc.) on assignments to cover National Military Establishment activities. (In addition, these representatives may be furnished transportation in the event of spot news stories of transcendent national interest for which commercial or charter facilities cannot be obtained.)

"11. Release from claim for injury or death.—Personnel specified in paragraphs 4K, 5c, and 8a will be required to sign the release form specified below, unless otherwise exempted when physically or mentally unable or in an emer-

gency under the provisions of these regulations.

"Air Transportation
"Release

. . . . . . . . . . . . . .
(Place)

. . . . . . . . . . . . . .
(Date)

"Know All Men By These Presents: Whereby, I ————————— am about to
(full name)
take a flight or flights as a passenger in certain Army, Navy and/or Air Force aircraft on ——————————; and whereas
(Date or dates)
I am doing so entirely upon my own initiative, risk, and responsibility; now, therefore, in consideration of the permission extended to me by the United States through its officers and agents to take said flight or flights, I do hereby, for myself, my heirs, executors, and administrators, remise, release, and forever discharge the Government of the United States and all of its officers, agents, and employees, acting officially or otherwise, from any and all claims, demands, actions, or causes of action, on account of my death or on account of any injury to me which may occur from any cause during said flight or flights or continuances thereof, as well as all ground and flight operations incident thereto.

. . . . . . . . . . . . . . . . . . .
(Signature)

. . . . . . . . . . . .
(Witness)

. . . . . . . . . . . . . . . . . . .
(Name of person to be notified in emergency)

. . . . . . . . . . . .
(Witness)

. . . . . . . . . . . . . . . . . . .
(Address of person to be notified in emergency)"

Exhibit No. 1 was signed by the decedent, pursuant to the provisions and directions of section 11, supra.

The plaintiff contends that the alleged release is void, and hence, that the defense based thereon should be dismissed. In support of her contention she argues:

(1) that since no claim existed in favor of the plaintiff's decedent at the time he executed the purported release the instrument in question was a covenant not to sue and not a release;

(2) that as a covenant not to sue it must be construed strictly against the party asserting it, and since it contains no language expressly exempting the Government from liability for its own negligence, there is no such exemption, and the covenant not to sue does not bar an action for wrongful death;

(3) that the covenant not to sue cannot bar an action by and in behalf of the widow and children of the decedent since they were not parties to the instrument; that their action is based on a right conferred by statute, Section 130 of the Decedent Estate Law of the State of New York, McK.Consol. Laws, c. 13, and not on a property right of which the decedent had the power to divest himself;

(4) that the instant covenant not to sue is void as against public policy, since by securing it in advance the Government enlarged the exceptions contained in the Federal Tort Claims Act, under which it waived its sovereign immunity against liability for its torts;

(5) that the covenant not to sue is void as against public policy because of the public or quasi-public service rendered by the United States Air Force.

*As to (1)*

▉▉ I am in agreement with plaintiff's contention that since no claim existed in favor of the decedent at the time he executed the instrument in question it is, in fact, a covenant not to sue, and not a release. "A release, as the word is used technically in speaking of Executory Contracts, is a discharge of an *existing* obligation or right or action." Williston on Contracts—Revised Edition, Vol. 6, section 1820. (Emphasis added.) However, between the plaintiff and the Government alone, the distinction between a release and a covenant not to sue is but technical and artificial. Although the manner of asserting the instruments as

**534**

defenses may vary in each case the final result would be the same.

"A release is properly a present discharge; and a release of a right to be acquired in the future is, therefore, anomalous, and in the view of early lawyers, an impossibility; but a covenant of perpetual forbearance has been from early times, in order to avoid circuity of action, a bar at law to an action, and if the covenantee or covenantees are the only defendants, a covenant of permanent forbearance is, therefore, as effective as a release. The distinction between such a covenant and a release is, nevertheless, of importance, for a covenant not to sue one or any number less than all of several joint debtors does not have the consequences of a release, and is given only its literal meaning * * * [T]here is no doubt in modern times that an attempted release of a future right must be construed as amounting at least to a covenant not to enforce the right whenever it arises * * * [S]uch contracts are valid unless opposed to public policy." Ibid, section 1823.

*As to (2) and (3)*

Under (2) the plaintiff contends that Exhibit 1 must be construed strictly against the Government, and, since it contains no language expressly exempting it from liability for its own negligence, there is no such exemption; further, that the instrument does not exempt the Government from liability for the decedent's *death,* as the right of action therefor arises under a statute and not from a property right of which her deceased husband had the power to divest himself.

▪▪▪ The second word "any" in the underscored phrase "of any any" in Exhibit 1 was obviously an error, making that part of the instrument vague and meaningless, if unexplained. It becomes necessary, therefore, to determine what the Government and the decedent intended that the document accomplish. Except for a few words its language is identical with that of the form of release prescribed by and contained in Exhibit 2, and accordingly we should look at that document in our effort to make the language of Exhibit 1 more intelligible. An examination of Exhibit 2 leaves little doubt that the typist who prepared Exhibit 1 intended to use the word "injury" in place of the second "any" in the underscored phrase "of any any". That would have conformed to the language of the release in Exhibit 2. But quite apart from that the instrument is complete and effective as a covenant not to sue, and all of the questionable language may be treated as surplusage, since the bracketed word "any" was inserted before the bracketed word "account" in Exhibit 1, although the former does not appear in Exhibit 2. It is my belief, therefore, that Exhibit 1 would bar the action to recover damages for wrongful death unless it was the result of wilful, wanton or gross negligence on the part of the Government, or any of its agents, officers or employees. A provision absolving the Government from liability for such negligence would, in my opinion, be violative of public policy.

In the case of Thomas v. Atlantic Coast Line R. R. Co., 5 Cir., 201 F.2d 167, the defendant, which leased certain real property to the plaintiff, claimed that under a provision of the lease the plaintiff was obliged to indemnify it against claims for damages to the leased building, whether such damage resulted from a fire caused by the negligent emission of sparks from a locomotive of the lessor railroad or otherwise. The Court, in reversing a judgment dismissing the plaintiff's action on the pleadings, said, at page 170,

"We do not at all agree with appellee's contention that the indemnity provision was intended to apply to cases including willful or wanton negligence. We find no language therein that is so clear and explicit as to compel a conclusion that the parties intended to exculpate the railroad from the consequences of

its own willful or wanton negligence. But conceding *arguendo* that the contract should be construed precisely as appellee contends, we do not see how appellee's position would be helped thereby. For if it could be said that the lease agreement did propose to exempt the railroad from liability for the consequences of a willful breach of duty it would, to that extent be illegal. Cf. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., v. Olvera, 9 Cir., 119 F. 2d 584; Greenwich Ins. Co. v. Louisville & N. R. Co., 112 Ky. 598, 66 S. W. 411, 67 S.W. 16, 56 L.R.A. 477; Restatement of Contracts, § 575; Williston on Contracts, Rev.Ed., Vol. 6, Sec. 1751B.

"The complaint is susceptible of the construction that the appellee railroad was guilty of willful or wanton negligence. The sharp and technical condemnation of pleadings that once obtained does not now exist. Cases are generally to be tried on their proofs rather than the pleadings and there was no justification for dismissing the complaint on the merits unless it appeared to a certainty that the plaintiff would not be entitled to any relief under any state of facts which could be proved in support of the claim. The test is whether the complaint, construed in the light most favorable to the plaintiff and with every intendment resolved in his favor, is sufficient to constitute a valid claim.

"The facts as set out in the complaint may prove to be such as to constitute willful or wanton negligence, and again they may not. This furnishes a question to be heard on the merits and the court erred for dismissing the cause of action on the pleadings."

In the case of Boll v. Sharp & Dohme, Inc., 281 App.Div. 568, 121 N.Y. S.2d 20, at pages 22 and 23, the Appellate Division of the Supreme Court, in reversing a judgment at Special Term dismissing the complaint on the ground that plaintiff's cause of action was barred by a release, said,

"Releases or covenants of this nature (an instrument absolving defendant from responsibility for consequences resulting from the taking of plaintiff donor's blood) have always been scrutinized, and have been enforced with many qualifications. Courts have always hesitated to allow parties to absolve themselves from the obligation to exercise ordinary care in human relationships, by contracting that the operation of the law of negligence shall be suspended in broad areas of conduct. The statement was made at the Appellate Division in an opinion by Hiscock, J., in Johnston v. Fargo, 98 App.Div. 436, 442, 90 N. Y.S. 725, 730, affirmed 184 N.Y. 379, 77 N.E. 388, 7 L.R.A.,N.S., 537, that 'The general principle that contracts breaking down common-law liability and relieving persons from just penalties for their negligent and improper conduct are not to be favored, and should not be given an enforcement beyond that demanded by their strict construction, has been announced by the courts with often-repeated reiteration.' Elsewhere it has been stated that 'Contracts exempting from liability for negligence are not favored by the law; they are strictly construed against the party relying on them, and clear and explicit language in the contract is required to absolve a person from such liability'. 17 C.J.S., Contracts, § 262. [Matter in parenthesis added.]

"In view of this acknowledged principle, it is pertinent to inquire whether the covenant not to sue, in the instant case, is broad enough to exempt defendant from all manner of negligence upon its part in taking plaintiff's blood. This case does not pose the question whether such an instrument is invalid, in its entirety, nor, necessarily, whether any part of it be void. The main ques-

tion is one of construction. In this context, the rule should be borne in mind, that parties are not construed to have intended to exempt themselves from the consequences of their own negligence in the absence of express language to that effect. Howard v. Handler Bros. & Winell, Inc., 279 App.Div. 72, 107 N.Y.S.2d 749, affirmed 303 N.Y. 990, 106 N.E. 2d 67."

In view of the foregoing the effectiveness of the purported release (Exhibit 1) as a bar to plaintiff's action cannot be determined without a trial *of the issue of negligence.* The trial court will then be in a position to ascertain whether there was negligence on the part of the Government, and, if so, the nature and extent thereof.

The plaintiff's claims Nos. (4) and (5) are without merit.

There is no merit in the claim made by the defendant Lockheed in its "third defense" that decedent, by executing the purported release of the Government, impliedly assumed all risks incident to his ride in the plane, and absolved Lockheed from all liability. Accordingly, the "third defense" set forth in the defendant Lockheed's answer is dismissed.